THE CITY OF ST. LOUIS TO USE OF GLENCOE LIME AND CEMENT COMPANY, *Appellant*, v. VON PHUL *et al.*

### In Banc, March 17, 1896.

1. **Contract:** THIRD PERSONS: PRIVITY. A contract between two persons made upon a valid consideration may be enforced by a third person, though not named in the contract, where the obligee owes to him some duty legal or equitable which would give him a just claim.

2. **Municipal Corporation:** STREET IMPROVEMENT: CONTRACT: PRIVITY. The duty which a city owes to one who labors upon or furnishes material for the improvement of its streets, creates such a privity between them as will entitle such laborer or material man to the benefits of a bond given by a contractor to the city conditioned on the payment of all sums due for labor or material furnished for the improvement.

3. ———: ———: ———: ———. A city whose charter authorizes it to improve its streets by contract and requires it to exact a bond from the contractor for the faithful performance of the work may make it a requirement of the contract and a condition of the bond that the contractor shall "pay to the proper parties all amounts due for material and labor" employed in the performance of the contract. *Kansas City Sewer Pipe Co. v. Thompson*, 120 Mo. 218, overruled.

*Appeal from St. Louis City Circuit Court.*—HON. DAN-
IEL DILLON, Judge.

REVERSED AND REMANDED.

*G. W. Lubke* and *W. B. Homer* for appellant.

(1)   The court erred in sustaining the objection
to the introduction of the bond and contract.   (2)   It
is established beyond controversy in this state, that a
person for whose benefit an express promise is made,
in a contract between other parties, may have the
benefit of such promise.   *Howsmon v. Trenton Water
Co.,* 119 Mo. 307; *Ellis v. Harrison,* 104 Mo. 276.   (3)
A debt due by a municipal corporation to its creditor
may by a creditor's bill be subjected to the satisfaction
of a judgment against the latter.   *Pendleton v. Perkins,*
49 Mo. 565; *Johnson v. Pub. Co.,* 122 Mo. 102; *St.
Louis v. Lumber Co.,* 114 Mo. 87; *Furlong v. Thomssen,*
19 Mo. App. 364; *Pickens v. Dorris,* 20 Mo. App. 1;
*St. Louis v. Keane,* 27 Mo. App. 642; *Luthy v. Woods,*
1 Mo. App. 167; *Luthy v. Woods,* 6 Mo. App. 67.   (4)
Provisions like the one in the contract in suit, made
for the benefit of laborers and material men, have been
sustained for many years in Missouri.   *Luthy v.
Woods,* 6 Mo. App. 70; *St. Louis v. Keane,* 27 Mo.
App. 642; *St. Louis v. Lumber Co.,* 114 Mo. 74.   (5)
The city not only had power as a corporation to enter
into a contract of this kind, but it was bound to do so
for the benefit of the laborers and material men, who
were doing the work.   *Chambers v. St. Louis,* 29 Mo.
579; *Luthy v. Woods,* 6 Mo. App. 70; *St. Louis v.
Keane,* 27 Mo. App. 642; *St. Louis v. Lumber Co.,*
114 Mo. 74; *Knapp v. Swaney,* 56 Mich. 349; *Bank
v. Mayor,* 97 N. Y. 355; *M. & T. Bank v. New York,*
123 N. Y. 265; *State v. Flad,* 26 Mo. App. 500; *City

*of Kansas v. O' Connell*, 99 Mo. 357; St. Louis Charter, art. 3, sec. 26, spec. 14; also art. 3, sec. 26, spec. 2; also art. 6, secs. 27 and 28.

*Willis H. Clark* for respondent, Municipal Trust Company; and *Laughlin, Wood & Tansey* for respondent, Butler.

(1) The city of St. Louis was without corporate capacity to delegate, to private individuals and for private purposes, its public corporate capacity to sue in the courts; nor to confer upon third parties the right to sue upon a contract between the municipality and contractors and sureties for public work; and any provision, exacted by the city, in any such contract, that the contractors and sureties shall be so liable to suit so brought, is inoperative and void. Constitution of Missouri, art. 9, secs. 20 to ·25 inclusive; Charter of the city of St. Louis; *K. C. Sewer Pipe Co. v. Thompson*, 120 Mo. 218; *Howsmon v. Trenton Water Co.*, 119 Mo. 304; *Ins. Co. v. Trenton Water Co.*, 42 Mo. App. 118; *City of Kansas ex rel. v. O' Connell*, 99 Mo. 357; *Breen v. Kelly*, 45 Minn. 252; *Ferris v. Carson Water Co.*, 16 Nev. 44; *Davis v. Waterworks Co.*, 54 Iowa, 59; *Mott v. Water & Mfg. Co.*, 48 Kan. 12; *St. Louis v. Telephone Co.*, 96 Mo. 623; *New Haven v. Railroad*, 62 Conn. 252; *Knapp v. Kansas City*, 48 Mo. App. 485.

MACFARLANE, J.—Defendants Von Phul and Joseph Grimm secured a contract from the city of St. Louis to repair the sidewalks in a certain district. The contract provided in detail for the work, the materials to be used, and for the payment therefor by special tax bills to be charged against adjacent property. At the end of, and as a part of, the contract was this obli-

gation, signed by the contractors and the Municipal Trust Company and Edward Butler as securities:

"The said St. Louis Sidewalk Company, Stephen Von Phul and Joseph V. Grimm, proprietors, as principal, and Municipal Trust Company and Ed. Butler as sureties, hereby bind themselves and their respective heirs, executors, and administrators, unto the said city of St. Louis in the penal sum of ten thousand dollars, lawful money of the United States, conditioned that in the event the said St. Louis Sidewalk Company shall faithfully and properly perform the foregoing contract according to all the terms thereof, and shall, as soon as the work contemplated by said contract is completed, pay to the proper parties all amounts due for material and labor used and employed in the performance thereof, then this obligation to be void, otherwise of full force and effect, and the same may be sued on at the instance of any material man, laboring man, or mechanic, in the name of the city of St. Louis, to the use of such material man, laboring man, or mechanic, for any breach of the condition hereof; provided that no such suit shall be instituted after the expiration of ninety days from the completion of the above contract."

The Glencoe Lime and Cement Company furnished the contractors materials for use in performing their contract. The suit is upon the contract, wherein plaintiff claims a balance due on account of materials furnished amounting to $9,153.30.

On the trial plaintiff offered in evidence an ordinance of the city providing for constructing and repairing sidewalks.

The defendants, the Municipal Trust Company and Edward Butler, objected to the introduction of any testimony in the case as against them for the reason that the petition failed to state or to show facts sufficient to constitute any cause of action in favor of either the

city of St. Louis or the Glencoe Lime and Cement Company against the said defendants or either of them, and that under the allegations made in the petition, neither the city of St. Louis nor the Glencoe Lime and Cement Company have any right of action upon the instrument sued upon against the said defendants or either of them.

The objection was sustained, and judgment was rendered in favor of said defendants and plaintiff appealed.

I.   That a contract between two parties upon a valid consideration may be enforced by a third party, when entered into for his benefit, is well settled law in this state.   This is so though such third party be not named in the contract, and though he was not privy to the consideration.   *Rogers v. Gosnell*, 58 Mo. 590; *State ex rel. v. Gaslight Co.*, 102 Mo. 482; *Ellis v. Harrison*, 104 Mo. 276, and cases cited.   It is sufficient in order to create the necessary privity that the promisee owe to the party to be benefited some obligation or duty, legal or equitable, which would give him a just claim.

II.   It is the policy of the law in this state to give security and protection to those who expend labor or supply material in making improvements for the benefit of private persons.   This is done by securing to them by express law a lien upon the improvements upon which the labor was done, and in which the materials were used.   The right to such security does not depend upon the character of the contract between the owner and contractor, under which the improvements were made.

That these lien laws are founded upon principles of equity and right can not be questioned.   The principle is that the labor expended and the material employed create the improvements and the one bene-

fited thereby should see that compensation therefor is made.

Through considerations of public policy the law has made no provision by lien, or otherwise, for the protection of the laborer and material men for labor employed or material used in improving the public streets. But it can not be denied that the same equity exists, and that the same moral obligation rests upon the city to protect those who improve its streets as rest upon those making private improvements. "Individuals clothed with public functions, even when constituting a corporation, are no more excused from moral obligations than when acting in a private capacity." *Knapp v. Swaney*, 56 Mich. 350.

There can, we think, be no doubt that the duty the city of St. Louis owed to anyone who should labor upon, or furnish material for, the improvements contemplated by the contract would create such a privity between them as would entitle the latter to the benefits intended to be afforded them under the express conditions of the bond.

III. But it is said that the bond, in so far as it undertakes, as a condition, to require the contractor "to pay to the proper parties all amounts due for material and labor used and employed in the performance" of the contract, is void. for the reason that the city had no power to exact it.

It must be, and is, conceded, that "a municipal corporation has no general authority to exchange promises with other corporations or persons; its contracts, to be valid, must be within the scope of the authority conferred upon it by law, and for municipal purposes." *Thomas v. Port Huron*, 27 Mich. 323.

But municipal corporations have not only the rights and powers expressly granted them but also such implied powers as are necessary to carry into full

effect those expressly granted. "Their contracts will be valid when made in relation to objects concerning which they have a duty to perform, an interest to protect, or a right to defend." *Vincent v. Nantucket*, 12 Cush. 105.

The charter grants to the city of St. Louis not only the power to improve its streets, and keep them in repair, but requires all such improvements to be let out by contract to the lowest bidder, and further requires a bond to be given by the contractor with at least two sufficient sureties. These powers and duties are express. Can it be doubted that under these express powers would be also implied the authority to provide by contract every detail of the duty of the contractor? The power to make improvements and to let contracts therefor and to exact of the contractor a bond for the faithful performance of his contract necessarily implies the power to do everything necessary for the faithful performance of the work, for the protection of the city and its citizens, and for securing the best and lowest possible bids. Indeed we are unable to conceive of any matter of detail incident to the contract and the work that the city might not require that a private person could require.

The charter requires a bond from the contractors to be taken. The conditions of the bond are not specified, except that it shall be for the faithful performance of the contract. The form and conditions are therefore left to the practical wisdom and business experience of the municipal authorities to whom it is intrusted. The same may be said in reference to the terms of the contract.

. The question, then, is this: Is the requirement of the contract and the condition of the bond, that laborers and material men shall be paid, a proper and reasonable incident to the express power to improve

the streets by contract and to require a bond of the contractor? We think it is, even aside from any moral obligation the city was under to protect the laborers and material men,

Such a requirement gives credit to the contractor and enables him to secure labor and purchase material more readily and on better terms than could be done without the credit. Thus the contractor can secure better labor and cheaper materials and is enabled to take the contract on lower terms than he could otherwise safely do. It also enables one with small means and limited credit to compete with those more advantageously circumstanced. The city is thus enabled to secure greater competition in bidding and to obtain better execution of the work on lower terms. It was not only to the interest of the city, but its plain business duty to secure those advantages.

We therefore think the city had the implied power to require the condition in the bond upon which plaintiff seeks to recover.

We are unable to draw a substantial distinction between the power exercised by the city in making this provision for laborers and material men, and that exercised in requiring the contractor to pay all such creditors as a condition to receiving his compensation from the city for the improvement. It is a question of power in each case.

The power to protect such creditors by the means last mentioned has never been questioned in this state so far as we have been advised. It was expressly recognized in *St. Louis v. Lumber Co.*, 114 Mo. 82, in which Judge THOMPSON of the court of appeals, whose opinion was approved, said: "It is true that such persons are not, under the law as judicially construed, entitled to a mechanic's lien against any property belonging to the city; but that does not seem to afford a good

reason why no effect whatever should be given to this clause of the contract." The clause referred to was one requiring the city to withhold enough of the contract price to meet the claims of any laborer or material man to whom the contractor might be indebted.

The same power was recognized in the board of public schools in *Luthy v. Woods*, 6 Mo. App. 68, and in the city of St. Louis in case of *St. Louis v. Keane*, 27 Mo. App. 644.

In the case of *Knapp v. Swaney*, 56 Mich. 349, in discussing a like provision in a contract of the county for the construction of a courthouse, after conceding the proposition that corporations and quasi corporations possess only the power expressly granted them, and such as are implied in order to effectuate the purpose of those given, Judge COOLEY says:

"But when this case is properly considered, it does not appear to be a case in which the municipality has in any particular stepped aside from its proper functions, or stepped over its proper bounds; it has simply made a contract for the construction of a necessary public building, and agreed upon the method and the conditions of payment. It has gone no further, and so far it had indisputably a right to go.

"But it is said that among the conditions is one which the corporate board had no right to impose, because it did not concern the public, but was a matter exclusively between the contractors and those who should deal with them. It is for this reason that the condition is assumed to be *ultra vires.* And had the condition been made the subject of independent contract, instead of being incorporated in a contract for a proper public work, the objection to it would have been insurmountable. Whether it was invalid here is a very different question.

"The purpose of the stipulation is very manifest. It is that a contract the county has made shall not be the means of mischief to those who, though not contractors with the county, may perform labor or furnish materials in reliance upon the moneys to be paid under it. It would seem that to prevent such mischief was a proper object to be had in view by any public board when entering into a public contract. It would seem that there was a moral obligation in the case which the board might well recognize even though not compellable to do so. And individuals clothed with public functions, even when constituting a corporation, are no more excused from moral obligations than when acting in a private capacity.

"A corporation when constructing a public building or other public work is chargeable with moral duty, as an individual would be, to see that it is so constructed that people may not be injured in coming near to, or making use of, it in a proper manner. In some cases they may not be legally responsible for failure to perform this duty; but where the moral obligation exists, it can not be said that any provision for its performance, not improper in itself, is *ultra vires*. A county may go to great pains and great expense to make its courthouse unquestionably safe, that individual citizens may not suffer injuries consequent upon its construction. But if it may do this, it would be very strange if it were found lacking in authority to stipulate, in the contract for the building, that the contractors when calling for payment, shall show that they are performing their obligations to those who supply the labor and materials, and that the county is not obtaining the building at the expense of a few of its people. We can not think such is the case."

We quote at length from this sensible and eminently just and equitable treatment of such contracts.

The reasoning is equally applicable to the contract here in question.  See, also, to same effect, *Bank v. Winant*, 123 N. Y. 267; *Bank v. Mayor, etc.*, 97 N. Y. 355.

The following cases uphold the right of third persons, such as subcontractors, laborers, and material men to maintain an action on a bond, given by a contractor to a state, county, city, or school district, conditioned for the faithful performance of a contract for a public improvement, and for the payment of all claims of such third persons, though no express power was given the obligee to require such conditions. *Baker v. Bryan*, 64 Iowa, 562; *Lyman v. City of Lincoln*, 38 Neb. 800; *Sample v. Hale*, 34 Neb. 221; *Korsmeyer, etc., Co. v. McClay*, 43 Neb. 649; *Kauffmann v. Cooper*, 65 N. W. Rep. 796.

In the case first cited, which was a suit on a bond given a school district, it is said by BECK, J.: "The authority to contract is general, and broad enough to cover all covenants which the directors, in their wisdom, may deem necessary or proper, in order to secure the erection of the house and the protection of the interests of the district—the objects for which the contract was made. If the directors of the district, in the exercise of their discretion, concluded that the work would be prosecuted with more rapidity, or would be better done by securing subcontractors, they surely would be authorized to provide therefor."

In the *Lyman* case, *supra*, the bond was given to the city of Lincoln to insure the erection of public buildings. The contract required of the contractor the payment "of claims of all parties furnishing materials or labor" in the construction of the buildings. The bond was upon the condition that the contractor should "well and truly execute all and singular the foregoing stipulations." The court held that one furnishing materials, which were used in the construction of the

buildings, could maintain an action therefor upon the bond. In its opinion the court says: "Obviously, the city of Lincoln intended by this bond to protect from defaults of its contractors all those who might labor on or furnish materials for its buildings. The petition assailed sets out no statute or ordinance authorizing the city of Lincoln to do this, but we do not deem such a statute or ordinance indispensable. The awarding of the contract to Lane & Sweet was a sufficient consideration to them and their sureties to support their promise to pay for this labor and material. The promise they made to the city of Lincoln was for the benefit of all who labored on these buildings and all who furnished material that was used in their construction; and since Lyman had furnished material to these contractors which was used in these buildings for the city, the bond inured to his benefit and he can maintain a suit thereon."

Several cases have been cited by defendants in support of their position that the action will not lie for want of authority in the city of St. Louis to require such conditions.

It has been held in this state, and in some others, that a private citizen whose property was consumed by fire, was not entitled to the benefit of a clause in a contract between the city and a water company whereby the latter obligated itself to furnish a supply of water sufficient to extinguish all fires, and to be responsible for all damages resulting from a failure to do so. *Howsmon v. Trenton Water Co.*, 119 Mo. 305, and cases cited.

Those cases are distinguishable from this one in the fact that the contracting cities were under no legal or moral obligation to its citizens to extinguish fires, and there was therefore not such privity between the

city, as promisee, and the citizen, as would give the latter a right of action on the contract.

It may also be said, as another distinguishing feature, that the general power granted a city to provide for the prevention and extinguishment of fires carried with it no implied power to make contracts for indemnifying citizens for losses by fire. Such contracts are neither beneficial to the city nor incident to the power conferred. They are merely independent contracts, which the cities have no more power to make than they have to make contracts with an insurance company for insuring the property of all citizens against loss by fire.

The case of the *City of Kansas ex rel. v. O'Connell*, 99 Mo. 359, is also cited and relied upon as an authority against the power of the city to make the contract. But it will be observed that the clause of the contract relied upon by plaintiff in that case was held not to have been intended as an agreement for the benefit of third persons, but for the protection and benefit of the city. That it was simply a contract of indemnity to the city. The court expressly declined to express an opinion on the question of the power of the city to enter into a contract for the benefit of third parties. It is said: "Whether the city could require the contractor to give a bond, which would be available to third persons in case of injuries received by them, on account of the negligence of the contractor, is a question which need not be considered."

The case of *New Haven v. Railroad*, 62 Conn. 253, is also cited by defendants as an authority sustaining their position. But it will be observed that the contract relied upon in that case was made solely for the benefit of third persons. The railroad company agreed with the city to pay all damages property owners should sustain on account of a contemplated

Milling Co. v. Riley.

change of its track.    The contract had no other object. In a suit on this contract by the city for the use of property owners, the court held that the city had no power to engage in the collecting business, or to act as trustee for its citizens at its own expense.    That contract had for its chief object the benefit of third persons, while in the case in hand the contract is for the benefit of the city and the protection given third persons was fairly incidental to it.

The case of *Kansas City, etc., Company v. Thompson*, 120 Mo. 221, in its facts, is not fairly distinguishable from this one, and is an authority directly sustaining the position of defendants.    But after a careful reconsideration of the question decided we are all of the opinion that the principles announced in that case can not be sustained either on reason or authority, and it should be, and with the concurrence of all the judges of division two is, overruled.

The judgment of the circuit court is reversed and the cause is remanded.    All the judges concur.