C. A. BURTON MACHINERY CO., A Corporation, Appellant, v. EFFIE M. RUTH, Executrix of the Estate of H. I. RUTH, Deceased, JOHN W. BERRY, E. E. GRAHAM, L. W. CHAPMAN and CHARLES E. LANGLEY, Respondents.

Springfield Court of Appeals, June 23, 1917.

1. **BONDS: Statutory Forms: Common Law: Who May Recover on.** A bond which does not follow the form laid down by the statute or embody the prescribed conditions may, nevertheless. be good as a common law bond and may be sued on by any one for whose benefit it was made, whether named therein or not.

2. **BONDS AND CONTRACTS: Who May Maintain Action on.** A third party may sue on a contract or bond entered into for his benefit

Burton Mach. Co. v. Ruth.

though not named therein and not privy to the consideration where the obligees in the bond owe such party a duty of protection and the terms of the bond are sufficiently broad and specific to cover such duty.

3. **BONDS: Valid if Not Violative of Statute or Against Public Policy.** A bond though voluntary and not authorized by any statute is valid if it does not contravene public policy nor violate any statute.

4. ————: **Failure to Meet Statutory Requirements: May be Good Under Common Law.** A bond taken by a public officer in attempted compliance with a statute may be good as a common law bond though it falls short of fulfilling the requirements of the statute.

5. **BONDS AND CONTRACTS: Action on: Who May Maintain.** To enable third persons not named in a bond or contract to sue thereon it must appear by the terms of the contract or bond that they are of the class covered by the conditions of the bond.

6. **PUBLIC OFFICERS: Neglect of Duty: Individual Liability.** Where public officers are required by law to take a bond from contractors of public buildings for the protection of laborers and materialmen, a failure to take a bond good as a statutory or common law bond renders such officers individually liable in damages, the taking of such bond being a ministerial act.

7. **BONDS AND CONTRACTS: School Buildings: Duty of Trustees to Require Bond of Contractor: Failure: Liability.** Action by materialman against school directors for failure to require from the contractor doing certain work a proper and sufficient bond conditioned for payment of material used as required by sec. 1247, R. S. 1909— amended Laws 1911, p. 106. The bond which the contractor executed is examined and deemed not, to comply with the statutory requirements. *Held*, also, that the bond was not available as a common law obligation on which the materialman might sue and as the taking of the bond was a ministerial act the school trustees were liable for failure to demand bond in accordance with the statute.

8. ————: **School Buildings: Failure of School Directors to Require Bond of Contractor: Liable, When.** The trustees of a school district did not require a contractor in the construction of a school building a bond complying with statutory requirements and the bond which they did require was not good as a common law obligation. The act required of the trustees by the statute was ministerial and the trustees cannot escape individual liability on the ground that the drafting, preparation and wording of the bond was judicial.

Appeal from Butler County Circuit Court.—*Hon. J. P. Foard,* Judge.

REVERSED AND REMANDED (*with directions*).

*Lew R. Thomason,* for appellant.

*David W. Hill. Mozley & Green, Hugh E. Tyson* and *Sheppard & Sheppard* for respondents.

STURGIS, J.—This su't is brought by plaintiff, a materialman who furnished a heating apparatus for a public school building in Poplar Bluff, Missouri, against defendants as members of the Board of Directors of the Poplar Bluff School District, based on the failure of defendants as such Board of Directors to require the contractor to execute a bond to such district conditioned for the payment of all material used in such work as required by section 1247, Revised Statutes 1909, amended, Laws 1911, page 106, as to a matter not material here. The petition counts on these facts: That defendants composed the Board of Directors of such school district; that said board contracted on behalf of the district with the firm of Lewis & Kitchen, contractors, to have them furnish and install a heating system in the high school building of that district; that plaintiff sold and delivered to said firm two boilers and fixtures to be used, and which were used, in constructing and installing such heating system and thereafter accepted and now in use in said building; that the firm of Lewis & Kitchen, became bankrupt and insolvent and plaintiff has never received payment; that the defendants failed, neglected and refused to require the contractors, Lewis & Kitchen, to give a bond conditioned as required by law; that plaintiff thereby lost the protection which such bond would have afforded it and is damaged thereby in the sum of $992.15, the price and value of such materials.

The case was here on a former appeal, reported in 186 S. W. 737, wherein the sufficiency of the petition as stating a cause of action was involved. This court then held that the petition stated a cause of action and, in so ruling, held that the duty of requiring a bond under

this statute is ministerial and that a failure so to do renders the members of the board individually liable in damages to a materialman who has furnished the insolvent contractor material entering into the public building and for which he is unable to collect.

That case was decided on the theory that no bond was required or given by such contractor. It now appears on the facts coming in that the contractor was required to and did in fact give a bond, amply sufficient in amount, to the school district and the comp'aint is that such bond does not contain the required statutory conditions "for the payment of all material used in such work and for all labor performed in such work, whether by sub-contractor or otherwise" or any equivalent condition such as will sustain an action by plaintiff on such a bond. It was held in Press Brick Co. v School District, 79 Mo. App. 665, 669, that the evident purpose of this act, since amended, is, since public buildings are exempt from the operati n of the mechanic's lien law, to afford a bond of the contractor giving a right of action thereon to such persons as would have a right to file and enforce a lien on such building were it not so exempt. It was held in that case, as the statute then read, that the duty to require the bond was corporate and not individual and no individual liability was incurred by the failure to require the bond. The statute was thereafter amended in 1909 so as to read as it now does for the evident purpose of making the duty, and therefore the liability, individual. The amendment cured the very defect which the court then held exempted individual liability and the statute now *does* "point out the county judge, the city aldermen, the town trustee and the directors of the school districts as the person or collection of persons who shall require the contractor to give the bond for the protection of the subcontractor, etc. . . . " [La Crosse Lumber Co. v. Schwartz, 163 Mo. App. 659, 663, 147 S. W. 501.]

The main contention in this case is whether the bond required and given by this contractor does afford a right of action thereon to this plaintiff. The bond, after re-

citing the making of the contract with Lewis & Kitchen, is conditioned: "Now, if the said Lewis & Kitchen, shall well and truly perform and fulfill all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled . . . and shall keep the said School District of Poplar Bluff, Missouri, harmless and indemnified from and against all and every claim, demand, judgment, liens and mechanic's liens, costs and fees of every description incurred in suits or otherwise, that may be had against them or against the buildings to be erected under said contract, including such alterations and additions' and shall *repay* the said School District of Poplar Bluff, Missouri, all sums of money which they may pay to other persons on account of work and labor done or materials furnished on or for said buildings, and if the said Lewis & Kitchen shall pay to the said School District of Poplar Bluff, Missouri, all damages they may sustain, and all forfeitures to which they may be entitled by reason of the non-performance or mal-performance on the part of said Lewis & Kitchen of any of the covenants, conditions, stipulations and agreements of said contract, then this obligation shall be void, otherwise the same shall remain in full force and virtue."

Since the bond is conditioned that the contractor perform and fulfill all the covenants and agreements of his contract, such covenants and agreements become conditions of the bond. The provisions of the contract so far as they have any bearing on "the payment for all material used in such work" are:

"The contractors shall and will provide all the materials and perform all the work for the installation of a heating and ventilating system in the new High School Building to be erected in the City of Poplar Bluff, Missouri.

"Should the contractors at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agree-

ments herein contained, such refusal, neglect or failure being certified by the architects, the owners shall be at liberty, after three days' written notice to the contractors, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractors under this contract . . . If the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owners in finishing the work, such excess shall be paid by the owners to the contractors; but if such expense shall exceed such unpaid balance, the contractors shall pay the difference to the owners. The expense incurred by the owners as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects, whose certificate thereof shall be conclusive upon the parties.

"The owners agree to provide all labor and materials essential to the conduct of this work not included in this contract in such manner as not to delay its progress . . .

"It is hereby mutually agreed between the parties hereto that the sum to be paid by owners to the contractors for said work and materials shall be seven thousand two hundred and ninety dollars ($7290). . . Payments are to be made monthly on estimates made by the architects upon all material on the ground and work done. Fifteen per cent of each estimate shall be reserved and held as final payment. All payments to be made as per schedule filed by these contractors.

"If at any time there shall be evidence of any lien or claim for which, if established, the owners of the said premises might become liable, and which is chargeable to the contractors, the owners shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify them against such lien or claim. Should there prove to be any such claim after all payments are made, the contractors shall refund to the owners all moneys that the latter may be compelled to pay in discharging any lien

on said premises made obligatory in consequence of the contractors' default.''

It is evident, from a reading of the contract and bond, that same were drafted by using forms adapted to contracts for constructing privately owned buildings. The defendants practically concede that the bond is not a statutory bond and does not contain, unless by indirection, a condition for "the payment of all material used in such work." They contend, however, that the bond is good as a common law bond, can be sued on as such and that there is sufficient in the bond and contract taken together to eke out the requirement to pay materialmen for material used in the work. Realizing the hardship imposed on these school officers, serving without pay, we have carefully scanned the provisions of the contract and bond to see if it is possible to hold that the bond given is in fact such as to accomplish the purpose of affording this plaintiff, a materialman, a cause of action thereon for the material furnished.

We have no difficulty whatever in holding that a bond not complying with the statutory form and embodying the prescribed conditions may, nevertheless, be good as a common law bond and may be sued on by any one for whose benefit it was made whether designated or named therein or not. A third party may sue on a contract or bond entered into for his benefit though not named therein and not privy to the consideration. "It is sufficient in order to create the necessary privity that the promisee owe to the party to be benefited some obligation or duty, legal or equitable, which would give him a just claim. [City, to use, v. Von Phul, 133 Mo. 561, 34 S. W. 843; Devers v. Howard, 144 Mo. 671, 46 S. W. 625; State, to use, v. Cochrane, 264 Mo. 518, 175 S. W. 599.]

''A bond though voluntary and not authorized by any statute is valid if it does not contravene public policy nor violate any statute. [Barnes v. Webster, 16 Mo. 258.] And it is a well settled r le that a bond taken by a public officer in attempted compliance with a statute

196 M. A.—30

is good as a common law bond though it falls short of fulfilling the requirements of the statute." [Lumber Co. v. Schwartz, 163 Mo. App. 659, 664, 147 S. W. 501; Lumber Co. v. Banks, 136 Mo. App. 44, 117 S. W. 611; Fellows v. Kreutz, 189 Mo. App. 547, 176 S. W. 1080; Uhrich v. Globe Surety Co. of Kansas City, 191 Mo. App. 111, 166 S. W. 845.]

Lumber Co. v. Banks, supra, also holds that the third person for whose benefit the contract was made may sue thereon in his own name.

The plaintiff relies on the case of Lumber Co. v. Banks, 136 Mo. App. 44, 117 S. W. 611, as holding that a materialman cannot maintain a suit on a bond conditioned as this one is. That case, like this one, is a suit on the bond of the contractor by a materialman furnishing material for a public school building. The plaintiff sued on the theory that the bond as good as a common law bond. An examination of the londitions f the bond then in suit shows that it is substantially like this one in that it is conditioned that the contractor shall well and truly perform and fulfill all the conditions and agreements of his contract; keep the school district harmless against claims, demands, liens, etc., against the district or building; and repay all sums which the district might pay to persons furnishing material or work. The contract there, as here, required the contractor at his own cost to furnish all the labor and material and erect the building; provided for payments at intervals as the work progressed, reserving a per cent until final payment, provided that the materials and work were then paid for; that the district might retain from money coming to the contractor enough to pay claims for work and material, etc. We find no material or distingushing difference between the facts of that case and this one. The court in that case lays special stress on the point that plaintiff was not a person who could sue on the bond since "to enable third parties, not named in the bond or in the contract, to sue on the bond, it must clearly appear, by the terms of the contract or bond, that they are of the class covered by the conditions of the

bond. When they are, they can sue, whether named in the bond or not; when they are not, they have no right of action on the bond,'' citing Buffalo Forge Co. v. Cullen & Stock Mfg. Co., 105 Mo. App. 484, 79 S. W. 1024. The court further said: ''While it may be said that there was no necessity for the school board to protect the building against liens (Press Brick Co. v. School District, 79 Mo. App. 655) the fact remains that this bond was drawn in such terms as to protect the school district alone, and not third parties. Conceding that there is no right of lien against the schoolhouse, counsel for appellant argues that if this bond is not for the protection of third parties, laborers and materialmen, it is meaningless. That may be true, but that fact surely cannot be held to extend the bond beyond its language and terms, or its necessarily implied obligation, at least that cannot be done as against the surety.'' The difference between the Buffalo Forge case, supra, and the Banks case, supra, is that in the one, the contract and bond to secure its performance, when read together, required the contractor to pay for the labor and material, while in the other, no such requirement was found therein. In the one, it was held that a suit could be maintained by the materialman on the bond and in the other, not.

Defendants maintain that the case of Lumber Co. v. Schwartz, 163 Mo. App. 659, 147 S. W. 501, conflicts with Lumber Co. v. Banks, supra, but this is a misapprehension. The Schwartz case is likewise a suit by a materialman on a bond given by the contractor of a public building on the theory that said bond, though not in compliance with the statute, was good as a common law bond and could be sued on by any one for whose benefit it was taken. The bond then in suit contained a provision, in addition to requiring the contractor to erect the building and furnish all the material and work, that he ''deliver the work to the owner free from all debt and liens of every character on account of materials furnished or labor performed in and about said building.'' The court said (p. 665): ''The most serious question

in the case is the contention of defendants that the bond on its face shows that it was not made for the benefit of third persons but for the sole benefit of the parties themselves. 'If it appear from the contract itself that it was made for the benefit of the contracting parties therein, and no other, an action by a third party cannot of course, be maintained thereon.' [Mfg. Co. v. Clark, 208 Mo. 89.]'' The court, however, held and rightly so, that the above condition of the bond is equivalent to a provision requiring the contractor to pay for the material, for how else could he deliver the work free from all debt or liens? On this point the court ruled: ''This being a public building no debts made by the contractor could become a lien or charge on the building or impose any liability on the board. So far as the protection of the building and of the board was concerned these words were superfluous but they were pregnant with meaning if their purpose was to benefit third persons. Manifestly it was the intention of the parties to insert a condition similar to that required by the statute, to compel the contractor to pay for material and labor that entered into the construction.''[Lumber Co. v. Schwartz, 163 Mo. l. c. 666.]

The Schwartz case is perhaps more accurate and logical than the Banks case in making the condition of the bond the crucial test of plaintiff's right to sue thereon rather than the plaintiff's privity of contract. Thus in Fellows v. Kreutz, 189 Mo. App. 547, 550, the court held: ''Galm, the contractor, while not covenanting in this contract and bond with the city that he would pay this plaintiff for material he afterwards bought of him, yet, of course, it was his duty to plaintiff to pay him and hence plaintiff, though not named in the obligation, may bring his action on the bond as being for his benefit. *But, of course, his rights will be governed by the terms of the contract, the benefit of which he seeks to obtain.''*

The difficulty in the present case, as was true in the Banks case, is that neither in the bond nor in the contract, to comply with which is a condition of the bond,

can be found any agreement, direct or indirect, that the contractor or sureties will pay for the material used in the public building. This point is illustrated by Fellows v. Kreutz, 189 Mo. App. 547, another suit by a material-man on the bond of a contractor of public works where the bond was held good as a common law bond. It was there held that the contractor's agreement *to furnish all the material for a public building is not equivalent to an agreement to pay for same,* since he complies with his contract whether he manufactures the material himself or obtains it on his personal credit. The cases there cited abundantly sustain this position. The court therefore held that there was nothing in the *contract,* similar to the one here, binding the contractor to pay for materials used and that the bond received no help from that source. It was found, however, that the bond itself contained a provision guaranteeing that "he (the contractor) will pay all bills for labor and material" and this is sufficient to sustain an action on such bond by the unpaid materialman. The case of Kansas City, to use, v. Youmans, 213 Mo. 151, 112 S. W. 225, is cited as holding that where the *contract* contained such a provision and the *bond* guarantees its performance, that will be sufficient, and so we would hold.

In Uhrich v. Globe Surety Co., 191 Mo. App. 111, 115, 166 S. W. 845, it was held that one who is only incident-ally and indirectly benefited by a contract cannot sue thereon; but the intent to benefit such third party must be expressed in the instrument itself when read and considered in the light of the circumstances surrounding its execution.

We find nothing either in the contract with the school district or in the bond now sued on obligating the contractor or sureties to pay for the material used in this building. Such obligation is found only in the contract of purchase made between the contractor and the plaintiff, but *that* contract is in no way embodied in or guaranteed by the bond sued on.

Defendants seek to point a difference in the "hold back" provisions of the contract and bond in the Banks

case, supra, and those in the present case, in that in the Banks case the "district might retain from the moneys coming to Banks enough to pay and satisfy such claims for work and material," while in the present contract and bond the district has a right to retain an amount sufficient to indemnify it against such lien or claim. We fail to see any material difference in these provisions and besides the "hold back" clause in any case confers a mere privilege to be exercised for the protection of the owner and does not create an obligation.

Stress is laid on the point that, while the taking of the bond is ministerial, the drafting and the wording of the bond is judicial and this controversy is pointed out as proof that it takes a high degree of acumen to determine whether the bond actually given is so worded as to afford protection to those furnishing material or work used in the building. The argument is that such legal acumen as this should not be required of school boards. The answer to this is, that the statute prescribes the exact conditions to be inserted in the bond and, as we pointed out on the first appeal, an act is ministerial when "performed in a given state of facts in a prescribed manner in obedience to the mandate of legal authority." It is only because the defendants did not require a bond with the prescribed conditions that judicial acumen has been invoked to determine their contention that the bond has equivalent conditions and is therefore equally effectual. There was nothing judicial about it till defendants chose to depart from the plain requirement of the statute and did something different. Having done a ministerial act in a judicial way and failed, defendants cannot complain.

Much might be said against the wisdom of the Legislature in requiring the individual members of the school boards to protect at their peril materialmen and laborers upon public buildings by requiring a good bond from the contractor. When a bond is required, as it was before the amendment of the statute, there is much justice in requiring that those furnishing the material and doing the work themselves look into the sufficiency of

such bond. With this, however, we have nothing to do. The defendants failed to require a bond in accordance with the statute and are liable.

It results that the judgment is reversed and the cause remanded to be retried in accordance with this opinion.

*Farrington, J.,* concurs; *Cox, P. J.,* not sitting.