KANSAS CITY to use of KANSAS CITY HYDRAU-
LIC PRESS BRICK COMPANY et al. v. F. C.
YOUMANS et al., Appellants.

**In Banc, June 26, 1908.**

1. **GUARANTY CONTRACT: To Be Strictly Construed: Meaning.**
   The guarantor is entitled to stand upon the strict terms of his guaranty, and such contracts are to be strictly construed. But that only means that his liability is not to be extended by implication beyond those terms, and that he is not liable for anything not within the express terms of the contract in which his guaranty is contained. It does not preclude the courts from applying to the guaranty contract the rules and tests applied to other contracts in endeavoring to ascertain the real meaning of the language used.

   *Held,* by **LAMM, J.,** in a concurring opinion, that a guarantor or surety, becoming such for mere hire, is not entitled to invoke the doctrine of very strict construction or that sureties are favorites of the law. That doctrine is for those persons who for sentimental reasons stand sponsor for the undertakings of others.

2. ———: **Continuing Guaranty: Limited Liability.** The contract read: "Said parties of the second part hereby guarantee that the said party of the first part will well and truly perform the covenant hereinbefore contained; to pay for the work and labor of all laborers and teamsters, teams and wagons employed in: the work, and for all materials used therein, . . . . but. said second parties shall not be liable on this guaranty on account of the materials used and labor done upon said work beyond the sum of $83,540, the estimated cost of the materials used and labor done on said work." The contractor or principal paid out about $115,000 in the performance of the work, and of this sum $95,000 was for labor, materials, and teamsters. *Held,.* that the contract was a continuing and unlimited guaranty,. with a limited liability affixed thereto; and was not satisfied by the payment by the principal for materials and labor of an amount equal to or greater than $83,540, but the guarantors are liable for all materials furnished and labor done and not paid for by the principal, to an amount not in excess of $83,540. Payments made by the principal did not *pro tanto* discharge the guarantors, but their liability remained for the $83,540 named in the contract, if it required that sum to make good the default of their principal.

*Held,* by **VALLIANT, J.,** dissenting, that when this bond was presented to the guarantors for signature, the natural answer to their inquiry as to what amount they would be obligated for would be, that it is estimated the cost will be $83,540, but it. may go beyond that, how much no one can say, and that it was intended to mean that the sureties guarantee that the contractor will fulfill his obligation up to the amount of the estimated cost, but not up to an indefinite amount beyond that. Hence, the guarantor's liability should be limited to a guaranty that the contractor would pay $83,540, and no more, and as he has paid that sum, the guarantors are not liable..

3. ———: ———: **To Give Credit.** Where a sewer guaranty contract was to give credit to the contractor and security to the laborers and materialmen until the construction was completed,. it will be held to be a continuing guaranty.

4. ———: ———: **Use of Word "All."** The use of the word "all" in the guaranty in the reference to laborers, teamsters and. materialmen is indicative of a continuing guaranty.

5. **CIVIL PROCEDURE: Fixed by Charter: No Demurrer.** An assignment that the city charter in declaring what shall be the court procedure in suits arising on contracts for a city improvement is in conflict with the statutes governing civil procedure, will not be considered on appeal, if first lodged in the case in the motion for a new trial. Where the suit was brought on a guaranty contract, and no demurrer was filed to the peti-

tion, and no motion was made to strike out the intervening petition, the question that the charter, in accordance with which the suit was brought, established a new and different civil procedure, cannot be raised for the first time in the motion for a new trial.

6. **SEWER: Materials: Powder: Dynamite.** In a suit on a guaranty contract to pay for materials used in the construction of a sewer, it is proper to require payment for dynamite, powder, fuse and caps used in blasting rock for the construction of the sewer, though they did not become a part of the work.

7. ———: ———: **Rope: Rubber Boots, Etc.** Rope, picks, pick handles, chains, buckets, spades, shovels, track spikes, rubber boots, and such things, constituting a part of the contractor's plant, or his tools with which to work, although worn out in the service, are not materials used in the construction of the sewer, and the guarantor is not liable therefor when sued on the contractor's bond for materials used in the work but not paid for.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

REVERSED AND REMANDED (*with directions*).

*Frank P. Sebree* and *Peak & Strother* for appellants.

(1) The contract of the appellant United States Fidelity & Guaranty Company sued on herein is a contract of guaranty. 14 Am. and Eng. Ency. Law (2 Ed.), 1128, 1130; 20 Cycl. of Law & Prac., 1397; Bank v. Libbey, 101 Wis. 193. (2) The contract, being one of guaranty, is to be construed so as to give effect to the intention of the parties as it is to be gathered from the instrument, and so strictly as not to extend the meaning of the terms used in the guaranty, or to amplify such meaning, so as to increase the extent of the obligation. Eddy & Co. v. Sturgeon, 15 Mo. 203; Railroad v. Smith, 27 Mo. App. 378; Mitchell Bros. v. Railton, 45 Mo. App. 278; Bauman Jewelry Co. v. Bertig, 81 Mo. App. 399; Bank v. Parrott, 125 Cal. 472; Hooper

v. Hooper, 81 Md. 155; Bank v. Hosie, 119 Mich. 116;
Schwartz v. Hyman, 107 N. Y. 565; Morgan v. Boyer,
39 Oh. St. 326. (3) The appellant's contract is a
limited and not a continuing guaranty, and appellant
was bound under it to see that Youmans paid on the
work the amount of $83,540, and no more. And more
than that amount having been paid by the principal
Youmans for the purposes specified in the contract,
appellant's contract has been performed and it is no
longer liable for any amount whatever. Eddy v. Stur-
geon, 15 Mo. 198; Smith v. Van Wyck, 40 Mo. App.
522; Glass Co. v. Moore, 119 Mass. 435; Cutler v. Bal-
lou, 136 Mass. 337; Sherman v. Mulloy, 174 Mass. 41;
Rueter v. Howe, 60 N. H. 579; Marx v. Schwartz, 14
Ore. 180; Congdon v. Reed, 7 R. I. 578; Lawton v.
Maner, 10 Rich. L. (S. C.) 323; Solary v. Stultz, 22 Fla.
265; Price v. Webster, 30 Ga. 802; Columbus Sewer
Pipe Co. v. Ganser, 58 Mich. 385; Towhy v. McMurran,
57 Minn. 242. (4) The Richards & Conover Hard-
ware Company was not entitled to recover anything on
its claim, inasmuch as none of the articles therein men-
tioned were used in the sewer, or became any part of
the sewer. Fitzpatrick v. Thomas, 61 Mo. 515; State
v. Gregory, 170 Mo. 604; Indiana Powder Co. v. Rail-
road, 116 Mo. App. 364; Basshor v. Railroad, 65 Md.
99; Allen v. Elwert, 29 Ore. 443; McAuliffe v. Jorgen-
son, 107 Wis. 132; Beals v. Fidelity & Deposit Co., 76
App. Div. (N. Y.) 526, 78 N. Y. Supp. 584; affirmed,
per curiam, in 178 N. Y. 581; Philadelphia v. Malone,
214 Pa. St. 90; Oppenheimer v. Morrell, 118 Pa. St.
189; Standard Oil Co. v. Lane, 75 Wis. 636; Holter
Hdw. Co. v. Ontario Min. Co., 24 Mont. 198; U. S. v.
City Trust, Safe Dep. & Security Co., 21 App. D. C.
369. (5) Even if the Richards & Conover Hardware
Company is held to be entitled to recover for some of
the items claimed for, still it is not entitled to recover
for any of the items specifically set out in the sixteenth

exception of appellant to the referee's report; such items amounting to $382.86. Authorities under point 4. (6) Section 20 of article 9 of the Kansas City charter is unconstitutional and void, and this proceeding not being justified by any valid provision of law, the judgment rendered is erroneous and should be reversed. Badgley v. St. Louis, 149 Mo. 122; Noble v. Kansas City, 95 Mo. App. 167.

*Botsford, Deatherage & Young, Johnson & Lucas, Charles B. Adams, R. H. Field, M. A. Fyke* and *Henry S. Conrad* for respondents.

(1) Section 20, article 9, of the charter was and is valid and is enforceable and in harmony with the Constitution and laws of the State. Kansas City ex rel. v. Schroeder, 196 Mo. 281; State ex rel. v. Field, 99 Mo. 352; Kansas City v. Scarritt, 127 Mo. 643; St. Louis v. Von Phul, 133 Mo. 651; Kansas City v. Marsh Oil Co., 140 Mo. 458; Devers v. Howard, 144 Mo. 671; Stephens v. Kansas City, 146 Mo. 460; Kansas City v. Ward, 134 Mo. 172; Kansas City v. Bacon, 147 Mo. 259; Kansas City v. Mastin, 169 Mo. 80. (2) The contention of appellants' counsel that Youmans was bound to pay the sum of $83,540 and that when that sum was paid by him the liability of appellants' sureties ceased, is not sustained by the contract sued on. The contract makes the sureties liable severally to each one of the materialmen and laborers for the amount of material and labor which they respectively put in the work; that is, a several liability in favor of each laborer and each materialman. Youmans was never liable to pay any person, or persons, the sum of $83,540. That sum was merely estimated by the engineer as the amount the work would cost, and the only figure which that sum cuts in the contract is that it fixes the maximum aggregate liability of the sureties who signed the contract,

for labor and materials, which Youmans failed to pay
for. Lyman v. City of Lincoln, 38 Neb. 794; Doll v.
Crume, 41 Neb. 655; School District v. Livers, 147 Mo.
580. (3) The contract of appellants created a liability
not only with those who contracted direct with You-
mans, the contractor, but with subcontractors for ma-
terial and labor. The purpose was to liberalize the
contract obligation of the contractor and his sureties
so as to make it answerable to all persons, whether
original or subcontractors, who furnished material or
labor on the work. Glencoe Lime & Cement Co. v.
Ward, 86 Mo. App. 163; Ihrig v. Scott, 5 Wash. St.
584; Sepp v. McCann, 47 Minn. 364. (4) The proposi-
tions of this brief are supported by the following ad-
ditional authorities: Guarantee Co. v. Press Brick
Co., 191 U. S. 416; Bethany v. Howard, 149 Mo. 513;
Spokane Lumber Co. v. Boyd, 58 Pac. 337; United
States v. National Surety Co., 92 Fed. 549; United
States Fidelity & Guaranty Co. v. Omaha Bldg. &
Const. Co., 116 Fed. 145. (5) The liability of the ap-
pellant sureties in this case cannot be determined by
the general principles of the law of surety or the law
of guaranty, but the appellant surety company in this
case, being in the business of making this class of bonds
for a consideration, sustains the position of insurer
and not the position of surety or guarantor. 27 Am.
and Eng. Ency. Law (2 Ed.), 452.

*Rees Turpin* and *Williams & Hunter* also for re-
spondents.

(1) Appellant is liable on the contract for the full
amount of the bills left unpaid by Youmans irrespec-
tive of the amount paid out on the work by Youmans.
(2) The procedure established in this State by the
Code and the decisions of the courts has been followed
in this case; plaintiffs are entitled to recover on this
contract without the aid of the charter, and plaintiffs

Kansas City to use v. Youmans.

Ash Grove White Lime Association and The Richards & Conover Hardware Company were properly made parties plaintiff under the general rules of procedure. Badgley v. St. Louis, 149 Mo. 122; State ex rel. v. Field, 99 Mo. 352; Devers v. Howard, 144 Mo. 671; Glencoe Lime & C. Co. v. Wind, 86 Mo. App. 163; Buffalo Forge Co. v. Mfg. Co., 105 Mo. App. 484; Kansas City ex rel. v. Shroeder, 196 Mo. 281; Carter v. Mills, 30 Mo. 432; Traven v. Dawson, 65 Mo. App. 93. (3) All of the items of material furnished by plaintiff The Richards & Conover Hardware Company were within the terms and intent of the contract and were used up and consumed in the work. This plaintiff is entitled to recover for them, and the finding of the referee and the judgment of the circuit court for this plaintiff should be sustained. Rapauno Chemical Co. v. Railroad, 59 Mo. App. 6; Andrews v. Railroad, 16 Mo. App. 299; Indiana Powder Co. v. Railroad, 116 Mo. App. 364; Schaghticoke Chem. Co. v. Greenwich, 76 N. E. 153; Zipp v. Fidelity & Dep. Co., 73 N. Y. App. Div. 20; Beals v. Fidelity & Dep. Co., 76 N. Y. App. Div. 526; Keystone Mining Co. v. Gallagher, 5 Col. 23.

PER CURIAM.—This cause having been transferred to the Court in Banc and having been re-argued, the following opinion of Judge GRAVES, in Division No. One, is adopted as the opinion of the Court in Banc.

*Gantt, C. J., Burgess, Fox* and *Woodson, JJ.,* concurring therein; *Lamm, J.,* concurs in separate opinion; *Valliant, J.,* dissents.

GRAVES, J.—Action by relators and intervening petitioners in the name of Kansas City on a contract entered into for the construction of a sewer in said city.

By ordinance No. 19459, the city of Kansas City provided for the building of a sewer in Sewer District No. 218 of said city. Having been the lowest bidder for the work required by said ordinance, the defendant, F. C. Youmans, was awarded the contract. He entered into such contract and one Geo. J. Baer, now deceased, and defendant United States Fidelity and Guaranty Company signed as his sureties or guarantors. In said contract, which is the contract sued upon herein, F. C. Youmans is designated as party of the first part, these sureties or guarantors as parties of the second part, and the city of Kansas City as party of- the third part. By the contract the first party was to be paid for his work in taxbills against the property in the district. This contract was drawn in form as prescribed by section 20 of article 9 of the Kansas City charter, and this suit now before us was instituted in the manner provided for in said section, so that we quote it in full, as follows:

"Contracts for making city improvements on streets, sidewalks, avenues or alleys, or for constructing sewers, let to the lowest bidder, shall contain a covenant on the part of the contractor or contractors with the city, to pay for the work and labor of all laborers and teamsters, teams and wagons employed on the job and for all materials used therein, and performance of such covenant to be guaranteed by two or more sureties signing the contract, whose sufficiency shall be approved as provided by ordinance, but who shall not be liable beyond the estimated cost of the materials used and labor done upon the job, to be stated in the contract: provided, that the city shall not be liable for the sufficiency of the contractors or sureties, nor for any failure to comply with or irregularity in complying with this provision. Laborers and teamsters and owners of teams and wagons who may do work, and parties who may furnish materials, stipulated for by

any such contract, may recover in an action in the name of the city for their use, in which no costs shall be adjudged against the city, and all costs not adjudged against the defendant shall be adjudged according to equity against the persons for whose use the suit may be prosecuted, all money due them for labor and materials, or either, not exceeding the estimated cost of the labor and materials as stated in the contract; and such recovery may be had against the contractor and sureties, or either, as in chancery; but it shall not be necessary to file with the petition the original contract. Suit may be brought for the benefit of all laborers, teamsters and owners of teams and wagons on the job, and for materials used in the performance thereof; and the amount due them be ascertained by the court or referee, unless the court direct an issue as to the amount due one or more laborers or others, or for materials to be tried by a jury; pending the suit, laborers, teamsters and owners of teams and wagons, and parties who have furnished materials for the performance of the contract, not mentioned in the petition, whether they have done work or furnished materials before or after the commencement of the suit, may become parties to the proceedings by appearing and filing in the action a written statement of their demand. Such notice thereof as the court may direct shall be given to the defendants and reasonable opportunity to defend shall be given. The proceedings shall, as far as practicable, be governed by the rules and principles of courts of chancery, so as to afford speedy and adequate relief according to the spirit and letter of this section. Judgment shall be rendered for the estimated cost of labor and materials as stated in the contract, and execution be awarded and issued for the aggregate amount found due the laborers, teamsters, and owners of teams and wagons, and the parties who have furnished materials, not exceeding the estimated cost in the contract, which

shall be collected with the costs. The money shall, af-
ter paying costs, be divided and paid pro rata among
those for whose use the judgment may be rendered.
The court shall decide all questions as to distribution
summarily on motion. No action shall be brought or
prosecuted for the benefit of laborers, teamsters or
owners of teams and wagons, or parties who have fur-
nished materials on the contract, unless the suit be
commenced within three months after the completion
of the work to be done under the contract and accept-
ance thereof by the city, nor shall such action be
brought before such completion and acceptance, unless
the court find good cause therefor, according to the
averments in the petition. Suits shall be brought in
some court of competent jurisdiction in Jackson
county, if jurisdiction of proper parties can be obtained
in the county.''

The contract thus entered into was duly confirmed
by the city in an ordinance numbered 19915. When
this suit was originally instituted, the relators were the
Kansas City Hydraulic Press Brick Company, Kansas
City Paving Brick and Tile Company, the R. J. & W.
M. Boyd Construction Company, corporations, and
Lynch Watkins Lime & Cement Company, and the
Builders Sand Company, co-partnerships, and John
Kingston, an individual. Later, under the provisions
of said section 20 of article 9 of the charter above
quoted, intervening petitions in said suit were filed by
Ashgrove White Lime Association, Richards & Con-
over Hardware Company, and the Halliwell Cement
Company, a corporation. Relators and intervening
petitioners claimed to have furnished labor and ma-
terial used in the construction of the sewer. By their
petition and intervening petitions, they set out the
items of their respective accounts and pleaded non-
payments as to certain balances due thereon, and they
pray judgment for the full amount of the guarantee

contract, i. e., $83,540, to be satisfied upon the payment of their aggregate claims, which amount was something near $13,000. The contract sued upon provided for the mode and manner of and the time within which said sewer was to be constructed by Youmans, as it did also provide for the prices for the different kinds of work to be paid, full details of which contract are not necessary, but the contested and vital portion thereof is paragraph 29, which is as follows:

"29. (a) It is further agreed and stipulated by the said party of the first part, that in the construction of the sewer to be built under this contract, he will use only brick of Kansas City manufacture, unless otherwise authorized by permission in writing by the city engineer, on account of the insufficiency of brick made in Kansas City to meet the needs of this contract, or inability to obtain such brick at a price not greater than that to be paid for brick of foreign manufacture, and for such reasons only.

"(b) The special taxbills to be issued for the work and improvements herein provided for shall be made payable in four equal installments, payable and collectible in all respects in compliance with the provisions of section 23, article 9, of the Amended Charter of Kansas City.

"(c) Provided, that nothing herein contained shall be construed to affect the rights of Kansas City, hereby reserved, to reject the whole or any portion of the work aforesaid, should the measurement of computation before mentioned be found or known to be improperly made, or to be inconsistent with the terms of this contract.

"(d) It is further expressly agreed that in no event will Kansas City be liable or responsible to the contractor or to any other person for or on account of any stoppage or delay of the work herein provided

213 Sup—11

for, by injunction or other legal or equitable proceedings, or for, or by or on account of any delay from any other cause whatsoever.

"(e) Said parties of the second part hereby guarantee that the said party of the first part will well and truly perform the covenant hereinbefore contained; to pay for the work and labor of all laborers and teamsters, teams and wagons employed on the work, and for all materials used therein, [and if the cost of such work and labor and materials is not paid in full by said party of the first part, then the said parties of the second part hereby agree to pay for said work, labor and materials or any part thereof which shall not be paid by said first party within ten days after the money for such work, labor and materials becomes due and payable, and this provision shall entitle any and all laborers and teamsters, and owners of teams and wagons who may do work, and parties who may furnish materials on or for the improvements to be done under this contract, to sue and recover from said second parties, or either of them, by said first party]; but said second parties shall not be liable on this guaranty on account of the materials used and labor done upon said work beyond the sum of eighty-three thousand five hundred and forty dollars ($83,540), the estimated cost of material used, and labor done upon said work.

"(f) And the said parties of the second part hereby agree with Kansas City that the said party of the first part will well and faithfully perform each and all of the terms and stipulations in the foregoing contract, to be done, kept and performed on the part of the said first party, but said parties of the second part shall not be liable hereon beyond the sum of one hundred and four thousand four hundred dollars ($104,400).

"(g) And the said parties of the second part hereby further agree with Kansas City that, if the work embraced in this contract be not begun within ten days

after this contract binds and takes effect, and prosecuted regularly and uninterruptedly thereafter in accordance with the terms and provisions thereof (unless the city engineer shall specially direct otherwise in writing) with such force as to secure its full completion within two hundred and forty days from the date of its confirmation, they will pay to Kansas City the sum of ten thousand four hundred and forty dollars ($10,440) as liquidated damages for such breach of this contract.

"(h) In witness whereof, the said parties of the first and second parts have hereunto set their hands and seals respectively, and Kansas City executed this contract by her city engineer."

Defendants, by way of answer, denied generally each and every allegation of the petition and intervening petitions and specially pleaded paragraph 29 above; and averred that their principal, Youmans, had paid on work done and materials furnished and used in said sewer more than $83,540, to-wit, $100,000; that by reason thereof, defendants as guarantors were not further liable on their said contract of guaranty. Replies were general denials.

Upon motion the circuit court referred the case to Hon. Henry L. McCune, as referee, and he found in favor of all the relators and intervening petitioners, except R. J. & W. M. Boyd Construction Company, the aggregate finding being $12,182.15. Upon the filing of this report of the referee, the appealing defendant, United State Fidelity and Guarantee Company, filed its exception to said report, which said exceptions were heard and overruled and judgment entered as per report of the referee. Motions for new trial and in arrest of judgment were likewise filed and overruled, and defendant abovenamed appealed to this court. The defeated relator took no further steps. If there is liability at all, it is practically conceded that the only questionable account is the one filed by and allowed to

the intervening petitioner, Richards & Conover Hardware Company. The referee further found that Youman had paid out of his own pocket about $115,000 in the construction of the sewer, and further "of this sum over $95,000 was paid for labor, materials and teamsters before the suit was instituted, and this was a reasonable and necessary expenditure."

For convenience of reference we have lettered the clause of paragraph 29 of the contract. These letters do not appear in the original.

There are three questions presented by the record, as follows:

1. Under the facts found and the contract pleaded, and the breaches of the contract alleged in the pleadings, is there any liability upon the part of the appealing defendant?

2. (a) Is section 20 of article 9, charter of Kansas City, in violation of section 16 of article 9 of the State Constitution, or violative of chapter 8, Revised Statutes 1899, entitled, "Code of Civil Procedure?"

(b) Was this question timely raised, being raised for the first time in the motion for a new trial?

3. If there is liability, should the claim of intervening petitioner, Richards & Conover Hardware Company, be disallowed *in toto* or in part?

Of these in their order. We are not without briefs on the questions, there being six in number.

I. The appealing defendant claims that the contract sued upon is what should be called a limited contract of guaranty. That the breach alleged is the failure to pay for the work done and material furnished and used in the construction of the sewer. That as to those items the limit of defendant's liability is $83,540, and that it stands undisputed that its principal, Youmans, had, at the institution of this suit, necessarily expended and paid for these items an amount greater than the amount which it guaranteed that he would pay,

i. e., $83,540, for such items of construction; that it is thereby discharged from any and all further liability upon this contract. This is the position of the defendant.

Respondents contend that the contract is one of guaranty, but unlimited and continuing as to guaranty, and limited only as to defendant's liability. Stated otherwise, they claim that defendant guarantees that its principal will pay for all labor and material used, whether it be in excess of $83,540 or not, and thus the guaranty is unlimited and continuing, and is not satisfied except upon and by a full payment by the principal, although the amount of work and material might be greatly in excess of the sum last named, but they aver the amount of the ultimate liability of the guarantors is fixed at $83,540. To illustrate their contention, suppose the work had cost $200,000 and the principal had paid nothing, then the defendant could be required to pay only $83,540 of the unpaid $200,000, but if the work had cost $200,000 and the principal had paid thereon $116,460, leaving a balance due of $83,540, the defendant would still be liable for the full face of the contract of guaranty. In the illustration it will appear that the guaranty is unlimited and continuing and runs with all items of labor and material used, but the amount of ultimate liability of the guarantor is limited. In other words, they contend that the contract of guaranty goes to the full amount of the labor and material used, but in no event can the liability of the guarantors be greater than the amount fixed in the contract.

The question is not one without difficulties. That contracts of this character must be strictly construed goes without citation of the cases. But this rule of strict construction does not preclude the courts from applying to the contract the rules and tests applied in the construction of other contracts, when undertaking to determine the real meaning of the contract and the

language used. This is what we did in Binz v. Hyatt, 200 Mo. 299. See, also, Jewelry Co. v. Bertig, 81 Mo. App. 593.

To our mind the true rule is so aptly stated in London and S. F. Bank v. Parrott, 125 Cal. l. c. 481-2, that we quote it: "When it is said that a guarantor is entitled to stand upon the strict terms of his guaranty, nothing more is intended than that he is not to be held liable for anything that is not within the express terms of the instrument in which his guaranty is contained; that his liability is not to be extended by implication beyond these limits, or to other subjects than those expressed in the instrument of guaranty. But for the purpose of ascertaining the meaning of the language which he has used, and thus determining the extent of his guaranty, the same rules of construction are to be applied as are applied in the construction of other written instruments. His liability is not to be extended by implication beyond the terms of his guaranty as thus ascertained. The language used by him is, however, to receive a fair and reasonable interpretation for the purpose of effecting the objects for which he made the instrument, and the purpose to which it was to be applied. If this language is fairly susceptible of two interpretations, either of which is within the spirit of the guaranty, he is not at liberty to say that the person to whom it is given was not justified in acting upon either, or that he should have acted upon one rather than the other."

See, also, Morgan v. Boyer, 39 Ohio St. l. c. 326, where it is said: "The rule that the language of a promise is to be construed most strongly against the promisor cannot properly be applied to the construction of a guaranty. A guarantor, like a surety, is bound only by the precise words of his contract. Other words cannot be added by construction or implication, but the meaning of the words actually used is to be as-

certained in the same manner as the meaning of similar words used in other contracts. They are to be understood in their plain and ordinary sense, when read in the light of the surrounding circumstances and of the object intended to be accomplished. The rule that a guarantor is held only by the express words of his promise does not entitle him to demand an unfair and strained interpretation of those words, in order that he may be released from the obligation which he has assumed.''

The rule in this State as stated by SMITH, P. J., in Smith v. Van Wyck, 40 Mo. App. l. c. 525, is: ''It is held in this State that when it is doubtful from the language contained in the contract whether the guaranty was for a single dealing or a continuous one, the true principle of sound ethics is not to set up a presumption for or against the guarantor, but to give the contract the sense in which the person making the promise believed the other party to have accepted it, if, in fact, he did accept it. [Boehne v. Murphy, 46 Mo. 57; Shine's Admr. v. Bank, 70 Mo. 524.] Extrinsic evidence cannot be received to contradict, add to, substract from or vary the terms of a guaranty, but, as has been stated, when its meaning is doubtful, or obscurely expressed, parol testimony in relation thereto, requisite to a clear understanding of its purport, is admissible.''

The real question is, did the guarantors by the instrument before us guarantee that their principal would pay for all labor (including men and teams) and material used, or did they guarantee that their principal, Youmans, would pay for all such labor and materials used up to $83,540, and no more? The appealing defendant says that the contract is a limited contract of guaranty, and means that the guarantors vouched for the faithfulness of their principal in paying $83,540, and no more, and where it appears, and it does so appear in this case, that their principal had paid, under

clause E of paragraph 29, more than $83,540, then there is no further liability upon the part of these guarantors. Respondents, as elsewhere suggested, say that the guarantors have by this clause of the paragraph guaranteed that their principal will pay for all such work and material, even though such items sum up into the millions, but that the contract simply limits the total sum for which the guarantors shall be liable, in the event their principal fails to pay the whole or any part of such items of work and material; that the guaranty is a continuing one and goes throughout from the first to the last item used, but the liability is limited to $83,540.

The cases are by no means harmonious as to what state of facts or language used constitutes a continuing guaranty. To better enable us to apply the case law to the language of this contract an elimation of a part of the clause involved can be had to an advantage. The part thus eliminated relates to the time in which an action may be begun and who can bring it and as to when the money is due from the guarantors. Eliminating these matters, which in no wise affect the guaranty part of the clause, we have the guaranty reading thus:

"(e)   Said parties of the second part hereby guarantee that the said party of the first part will well and truly perform the covenant hereinbefore contained; to pay for the work and labor of all laborers and teamsters, teams and wagons employed on the work, and for all materials used therein, . . . but said second parties shall not be liable on this guaranty on account of the materials used and labor done upon said work beyond the sum of eighty-three thousand five hundred and forty dollars ($83,540), the estimated cost of materials used, and labor done upon said work."

Had the portion just preceding the stars, quoted hereinabove, been followed by the words, "to the extent of $83,540 and no more," instead of by the portion

following the stars, then we take it that there would be no question of there being a limited guaranty, in which case the payment by the principal of the sum so guaranteed would discharge the guarantors. The guaranty would then read: "Said parties of the second part hereby guarantee that the said party of the first part will well and truly perform the covenant hereinbefore contained; to pay for the work and labor of all laborers and teamsters, teams and wagons employed on the work, and for all materials used therein, to the extent of $83,540 and no more."

The guaranty would then obligate the guarantors to see that their principal paid that sum on such items of construction and would be limited, and when the principal had paid on such items that sum the guarantors would be discharged. Such is the prevailing rule in contracts of limited guaranty.

But is the guaranty last quoted the guaranty contained in the instrument sued upon in this case? It largely depends upon the construction to be given to the language following the stars, as above quoted, and what effect that language has upon the preceding language. The reported cases while enlightening us upon the general principles of liability under limited and continuing guaranties, aid us but little in determining the meaning of the words of this contract. Had the guaranty stopped with the language: "Said parties of the second part hereby guarantee that the said party of the first part will well and truly perform the covenant hereinbefore contained; to pay for the work and labor of all laborers and teamsters, teams and wagons employed on the work, and for all materials used therein," it would have been unlimited and no question about the liability of defendant could arise. Now do the words, "But said second parties shall not be liable on this guaranty on account of the materials used and labor done upon said work beyond the sum of eighty-

three thousand five hundred and forty dollars ($83,-540), the estimated cost of material used, and labor done upon said work," undertake to limit the general guaranty, that the principal would pay for *all* labor and materials used, or do they simply limit the amount of money for which the guarantors shall be liable in case of a total or partial failure upon the part of the principal? Some light may be thrown upon the question by a glance at the ordinance under which the contract was drawn. The contract is presumed to have been made in view of existing ordinances, but in this case we do not have to indulge the presumption, because the contract upon its face shows that it was drawn under the terms of the ordinance, and for that reason the parties, when contracting, had the ordinance in mind. This ordinance says: "Contracts for making city improvements on streets, sidewalks, avenues or alleys, or for constructing sewers, let to the lowest bidder, shall contain a covenant on the part of the contractor or contractors with the city to pay for the work and labor of all laborers and teamsters, teams and wagons employed on the job and for all other materials used therein, and performance of such covenant to be guaranteed by two or more sureties signing the contract, whose sufficiency shall be approved as provided by ordinance, but who shall not be liable beyond the estimated cost of the materials used and the labor done upon the job, to be stated in the contract."

It will be observed that the contract follows the wording of the ordinance. The ordinance requires the contract to contain, (1) a covenant that the contractor shall pay for *all* labor and material, (2) a guaranty by two or more sureties that such *covenant* shall be performed, and (3) a clause limiting the total liability of the guarantors. The contract in this case is in strict accordance with the ordinance. A reading of the ordinance and contract shows that it was contemplated that

there might be more labor and materials required than was estimated. Yet with this in contemplation, both the ordinance and contract in effect say that the covenant of performance in this respect shall be "to pay for the work and labor of *all* laborers and teamsters, teams and wagons, employed on the job and for *all* materials used therein, and performance of such covenant to be guaranteed." The language used is "all," not up to a given amount. The guaranty under the ordinance must go to all work and material to be used in the course of construction, and not to the limited amount of $83,540 of such work and material. In our judgment this is a continuing guaranty, but has affixed thereto a limited liability. In other words the guaranty to pay attaches to each and every item of labor and material used, as from time to time the same is used, but there is a limitation in the total amount which the guarantors may be required to pay. It is clear that it was contemplated that the amount required might exceed the estimated cost, and if the guarantors had desired to limit their guaranty as well as their liability, they could have done so by appropriate words as we have indicated hereinabove, but this they did not do, and no doubt for the reason that to do so would be violative of the ordinance. They chose rather to follow the language of the ordinance providing for such contracts, and gave an unlimited guaranty, but added a clause limiting the liability. This makes what is denominated a continuing guaranty, with a limited liability, and in such case, payments made by the principal do not *pro tanto* discharge the guarantors, but their liability remains to the full amount named in the contract, if it requires that sum to make good the default of their principal. This being a contract somewhat out of line with the ordinary commercial guaranties, it is difficult to find any exact precedent.

However, this contract comes nearer falling into

that class of cases on commercial guaranties where the liability is limited but the time is not expressly limited, than into any other class, unless it be that class wherein the object is to give standing and credit to the principal either indefinitely or until expiration of a fixed period. Here the evident object of the guaranty was to give credit to the contractor and security to the laborers and materialmen until such time (a fixed time in the contract) as the contract was completed. It contemplates numerous dealings with divers persons. The general rules in such cases, as stated in 20 Cyc. 1440 and 1441, are:

"When the amount of the liability is limited and the time is not expressly limited the courts lean towards construing the guaranty as a continuing one.

"The liability under the guaranty will be regarded as continuing when by the terms of the contract it is evident that the object is to give a standing credit to the principal debtor to be used from time to time either indefinitely or until a certain period. So a guaranty may be construed as continuing where attendant circumstances strongly indicate that more than a single transaction was contemplated, especially if the right to recall the guaranty is expressly reserved."

Likewise the use of the word "all" with reference to laborers, teamsters, teams and material used, is indicative of a continuing guaranty. This word is much stronger than words which have been held to indicate a continuing guaranty. The law is thus stated by the same authority on page 1441: "The use of the word 'may' with reference to the proposed transactions between the principal parties is held usually to indicate a continuing guaranty. So words guarantying payment for 'any goods' which may be purchased by the third person, or the payment of 'any debt' which may be contracted, up to a certain amount, are almost invariably held to indicate that the liability is intended

to be continuing." See also discussion of the word "all" in case of Lewis v. Dwight, 10 Conn. 95.

In the case of Trustees of the Presbyterian Board of Publication and Sabbath-School Work v. Gilliford, 139 Ind. 524, the following contract was under review:

"We hereby jointly and severally guarantee to the Presbyterian Board of Publication payment for all sales which may be made by them to Rev. William A. Patton, but our liability on this guaranty not to exceed, in any event, $3,000."

Under this contract, Patton purchased goods aggregating over $10,000 during years from 1881 to 1889. He paid for all except $1,600; and the action was to recover that sum. Of this contract, the court said: "In the contract before us there is no limit expressed as to the amount of the sales or the time during which the guaranty should continue. Indeed, the amount of sales guaranteed seems to be expressed as unlimited. Guaranty is expressly made of 'payment for all sales which may be made.' The only limitation named in the contract is as to the ultimate liability of the guarantors, and that is fixed at 'not to exceed in any event $3,000.'"

So in the case at bar. The guaranty is, "to pay for the work and labor of *all* laborers, teams and wagons, employed on the work and for *all* materials used therein," but the ultimate liability only is fixed and limited. The amount of labor and material to be used is not limited, for that is only estimated.

In Mathews v. Phelps, 61 Mich. 327, the following contract was considered:

"It is hereby mutually agreed that William E. Moloney and Ralph Phelps, Jr., is to become the surety of Charles Savenac to James L. Mathews, for the sale of cigars, to the extent of two hundred dollars."

Of this contract, the court said: "The record further shows that Savenac failed to return to the

plaintiff money received by him on the sale of cigars, to the amount of $169.04. . It also appears that the sales made by Savenac for the plaintiff amounted to more than $1,000, and defendant's counsel contend that the contract of suretyship did not extend beyond the sale of $200 worth of cigars, and was not continuous; and, plaintiff having received returns exceeding $200, the defendants are not liable in this action. This would be a narrow construction to place upon the terms of the contract. It is the extent of the liability, and not the extent of the sales, that is limited to $200.''

So in the case at bar, it is the extent of liability that is limited, not the amount of labor and material to be used.

It would require a volume to review the cases wherein is discussed the question as to what words do or do not constitute a continuing guaranty. A great number of them are reviewed in Brandt on Suretyship Guaranty (3 Ed.), secs. 178, et seq., and are cited by counsel for the respective parties in this case. Whether or not the contract is to be declared a continuing guaranty or a limited guaranty must be determined by the language under review in each particular case, as well as by such circumstances as are permissible under the rules for the construction of contracts. Whilst the courts differ as to what words do or do not constitute a continuing guaranty, they seem to agree upon the question that if the contract is found to be a continuing guaranty, the payments by the principal do not discharge the guarantor unless such payments discharge the full debt to which the guaranty attached.

We have read each and every case by counsel cited, as well as such others as we could find, and applying to the contract in this suit the usual rules of construction, we conclude that the guaranty herein contained is a continuing guaranty, and one which attached to each item of labor and material furnished in

the construction of the sewer, and that the guaranty in that sense was unlimited, but that the ultimate amount of the guarantor's liability alone was limited. In such case the guarantors are not released from liability until all labor and material are paid for by their principal, and upon his failure, the guarantors are liable.

II. It is urged that section 20, article 9, of the Kansas City charter, is violative of the State Constitution and also in conflict with the State laws pertaining to civil procedure. This complaint is directed to that portion of the section which undertakes to establish a court procedure in cases arising on contracts of this character. A discussion of this question is not necessary to a determination of this case. It was first lodged in the case on a motion for new trial, and thus after issues had been joined and a trial had upon the merits. It is clear that the first portion of the challenged section violates no constitutional provision. And we do not, in this case, undertake to pass upon the latter portion, or that portion prescribing a method of procedure in the courts. In the record before us no demurrer was filed to the petition, and no motion made to strike out the intervening petitions. Under such circumstances the question raised for the first time in the motion for new trial is unavailing. The question as to whether or not the city could maintain the suit in manner in which it was brought, was the subject of demurrer, and is waived by the answer being filed to the merits. [Rankin v. Real Estate Co., 199 Mo. 345; Kansas City ex rel. v. Surety Company, 196 Mo. l. c. 300.] The latter case is an action similar in many respects to the one at bar, and involving the identical charter provision, and in disposing of the matter, BURGESS, J., said: "Defendants claim that the court erred in permitting the McTernan-Halpin Rock Crushing Company, Stewart-Peck Sand Company and Halliwell Cement Company to file intervening peti-

tions, such permission being without authority of law. The record shows that while appellants did move the court to strike out the intervening petitions of respondents, the motions were overruled; that defendants then answered and went to trial upon the merits, and in this way waived the questions. [Rinard v. Railroad, 164 Mo. 270; Liese v. Meyer, 143 Mo. l. c. 556; Cofer v. Riseling, 153 Mo. 633; Springfield E. & T. Co. v. Donovan, 147 Mo. 622.] The objection might have been raised by demurrer upon the ground that there was defect of parties plaintiff, that several causes of action were improperly united, or that the parties plaintiff, i. e., the interveners, were not necessary parties to a complete determination of the action. Had objection to the petition, for the causes intimated, been made either by motion or demurrer, the petition could only have been sustained, if at all, under section 20 of article 9 of the city charter, under which the interveners were permitted to intervene, the validity of which section would necessarily have been involved. But as this was not done, and as objection to the action of the court in overruling the motion to strike out said intervening petitions was waived as aforesaid, that section of the charter is not before us for review.''

So in this case the question of the constitutionality of this charter provision is not necessarily before us. When it becomes a live issue it will be time enough to make a disposition thereof. However this city charter provision for procedure in the State courts is a little singular to say the least of it. This leaves but one question remaining in the case, and to that we next proceed.

III. The referee, as to Richards & Conover Hardware Company, found the facts thus:

''*Seventh.* The sewer was built by the defendant Youmans. In the work of construction material and labor were furnished and were used therein as fol-

lows: . . . . By Claimant Richards & Conover, Hardware Company, a corporation, blasting powder, dynamite, fuse, caps, rope, nails, spikes, buckets, rubber boots, hose and tools, as shown by Exhibit '4' of the transcript, and on which there remains due the sum of $678.29. Items of this account were used on the work but did not go into or become a part of the work. All of these items, however, were consumed on the work, except a few hundred feet of wire rope, which was badly worn.''

His conclusion of law on this claim is stated in this language:

"*Eighth.* The claimant Richards & Conover Hardware Company is entitled to recover from the defendants the sum of $687.29, with interest from the date of the filing of its demand herein, January 22nd, 1904, at the rate of 6 per cent per annum.''

The defendant excepted to these conclusions in this manner:

"15. This defendant excepts to the eighth conclusion of law contained in said report for the reason that upon the law as applied to the facts found by the referee in said report, the claimant Richards & Conover Hardware Company is not entitled to recover any sum whatever, either of principal or interest, against this defendant, but, on the contrary thereof, the judgment, upon the facts as found and the law as applied thereto, should be in favor of this defendant and against said claimant.

"16. This defendant further excepts to said eighth conclusion of law for the reason that the undisputed evidence shows that the account sought to be recovered by said Richards & Conover Hardware Company, in its written statement of claim and demand filed herein, the amount of $382.86 was and is claimed for the price of articles such as manila rope, wire rope,

wire rope clamps, washers, wooden buckets, shovel handles, railroad spikes, hatchets, chains, wire nails, hoop pails, cedar buckets, hose couplings, etc., which did not enter into the construction of said sewer and became no part thereof, and are not within the description of any of the articles for which this defendant became in any way liable by the terms of contract of guaranty signed by defendant and sued upon herein; the specific items of said account and the amounts thereof, above referred to, are as follows, to-wit: [Here follows list and date of articles.]

"And said referee finds that a part of the claim of said claimant is for 'rope, nails, spikes, buckets, rubber boots, hose and tools as shown by Exhibit 4 of the transcript,' and that 'items of this account were used on the work but did not get into or become a part of the work,' and that under the law as applied to the undisputed evidence and said findings this defendant is in no way liable for that part of said claim set out above."

Defendant contends that its fifteenth exception as above set out should have been sustained. And it further insists that even if the claim as to powder should be allowed, yet its sixteenth exception as to other items should have been sustained. We think the fifteenth exception was properly overruled. In the account were items for blasting powder, dynamite, fuse and caps. This exception struck at the whole account. When the contract to build this sewer was entered into, it must have been considered that blasting rock would be a necessary part of the work, and to that end the use of such material as above named would be required and used. Under the lien laws pertaining to railroads it has been held that such items were recoverable. [Rapauno Chem. Co. v. Railroad, 59 Mo. App. 1. c. 12; Zipp v. Fidelity & Deposit Company, 73 App. Div. (N. Y.) 20; Powder Co. v. Railroad (N. Y.), 76 N. E. 153;

Hazard Powder Co. v. Byrnes, 21 How. Prac. 189; Giant Powder Co. v. Railroad, 42 Fed. 470.]

In Rapauno Chem. Co. v. Railroad, supra, the court says: "The rule to be deduced from the foregoing authorities is that, in order to maintain a lien for materials furnished, it is not necessary in all cases that such materials should actually have gone into the structure and formed a part thereof. It is sufficient if their use was necessary, and they were in fact used or consumed in the making of the improvements. Hence, we think that the argument is unsound that the lien in the case here must fail because the powder was entirely consumed, and, therefore, could not have been actually incorporated in the work. Such a construction of the statute we conceive to be a strained one, and not within its equity or spirit. What was said on this subject by the Supreme Court in the case of Simmons v. Carrier, 60 Mo. 581, must be read in the light of the particular facts of that case. There the claim was for lumber. The court held that a lien could not be maintained for such material, unless it actually entered into the construction of the building. This was undoubtedly a proper construction of the statute as applicable to lumber and such like materials to be used in or on the improvements; but in our opinion it is unreasonable to apply such a test to powder which is entirely consumed in its use." What is there said as to powder applies with equal force to dynamite, fuse and caps, likewise used and for like purpose.

In Powder Co. v. Railroad, 76 N. E. l. c. 155, in discussing powder used for blasting in the construction of a railroad, the Court of Appeals of New York says: "The argument that dynamite is not a material, but a part of the contractor's plant, which, like picks and shovels or mechanical appliances, are used in the performance of work, but are not considered materials furnished within the purview of the statute,

seems to us inherently unsound. A steam shovel, an engine and boiler, picks, shovels, crowbars, and the like, are tools and appliances, which, while used in the doing of the work, survive its performance and remain the property of their owner. Not so, however, with materials that are used up in the performance of the work, and are therefore invisible except as they survive in tangible results. We think that explosives, when used as substitutes for other recognized 'materials,' are covered by the same principle. They enter into and form a part of the permanent structure quite as much as the earth, rails, ties, culverts, and bridges that we can see and feel.''

So that as to the articles mentioned aforesaid, we hold that they are materials used in the sewer built and for which the defendant is liable. There was no error in overruling the fifteenth exception.

Exception number 16 raises quite a different question. By this exception the defendant leaves out the items in the account of powder, dynamite, fuse and caps, used in blasting rock, but attacks the remaining items of the account covering such things as rope, picks, pick handles, chains, buckets, spades, shovels, track spikes, rubber boots, etc. This exception is quite different from exception number 15, wherein was attacked the whole account, including powder, dynamite, fuse and caps. There was error committed in overruling this exception number 16. The articles therein named are such as constitute a part of the contractor's plant, or his tools and implements with which to do the work. Such articles, although worn out in the service, should not and do not fall within the term of materials used in the construction of a sewer or like work. Such articles have usually been classed in the contractor's plant, or tools and implements of work, and not as materials used. [Powder Co. v. Railroad, 116 Mo. App. l. c. 369; Rapauno Chem. Co. v. Railroad, supra;

Basshor & Co. v. Railroad, 65 Md. 99; Beals v. Fidelity and Deposit Co., 76 App. Div. (N. Y.) 526; Allen v. Elwert, 29 Ore. l. c. 443.]

It is urged by the intervening petitioner, Richards & Conover Hardware Company, that the evidence shows that the articles were entirely consumed in the work on this job and for that reason they fall within the term "materials used therein," as found in the contract. There are some loose expressions in several cases that lend color to the contention made by this respondent, but we are not impressed therewith, and will not follow such cases. Tools, implements and appliances used by the contractor in the prosecution of the work are not materials used therein in any reasonable sense of the term. If a pick, shovel, pair of boots, hoisting rope, or any other implement, tool or appliance used by the contractor on the work, is worn out or broken, it does not follow that such article thus becomes material used therein within the meaning of the contract. The contract presupposes that the contractor has and will furnish upon his own account the necessary tools, implements and appliances with which to perform the work.

It follows that the court erred in overruling the sixteenth exception of defendant. The items thus erroneously placed in the judgment appealed from aggregate $382.86. The judgment allowed to Richards & Conover Hardware Company $687.29, when it should have allowed to said intervening petitioner only the sum of $304.43. In all other respects the judgment of the trial court is correct.

To obviate the issuance of process from this court, although legal and proper, and often done, instead of modifying the judgment of the circuit court and entering judgment here, we will reverse and remand the cause to the circuit court, with directions that said court modify its former judgment to the extent herein

indicated, i. e., by allowing Richards & Conover Hardware Company $304.43, instead of $687.29, and that it enter such modified judgment as of the date of the original judgment. The costs of this appeal should be and will be taxed to intervening petitioner Richards & Conover Hardware Company.

It is, therefore, ordered that the cause be reversed and remanded with the directions, aforesaid, and that the costs of this appeal be taxed to respondent Richards & Conover Hardware Company. *Woodson, J.,* concurs; *Lamm, J.,* concurs in a separate opinion; *Valliant, P. J.,* dissents in separate opinion.

## SEPARATE CONCURRING OPINION.

LAMM, J.—Not only do the precedents cited, the reasons employed, and the grammatical construction and analysis made of the contract signed by appellant as guarantor, abundantly sustain the conclusion reached in the opinion to the effect that the guaranty was a continuing one (covering each and every item of labor, material, etc., used in the construction of the sewer), and that the *limitation was on appellant's liability alone,* but additional observations seem in order. For instance, it is not plain to me that the guarantor or surety, becoming such for gain and mere hire (such as appellant is), is entitled to invoke the doctrine that sureties are favorites of the law, or the doctrine of very strict construction. It seems to me those doctrines are fictions of the law invented as a shield for those persons who for sentimental reasons stand sponsor for others in their undertakings. For this reason, the law holds them in tender regard. Why should a mere hireling stand in their shoes or wear their livery?

Furthermore, the plain justice and good sense of the thing run with the opinion. It has been said, the

laborer is worthy of his hire. It may be said, the materialman is worthy of his pay. Common honesty says as much as that. Now, Kansas City with these ends in view prescribed by ordinance that all laborers and all materialmen should be paid. Such end is a proper municipal purpose. [St. Louis to use v. Von Phul, 133 Mo. 561.] The ordinance does not say that part shall be taken and the rest left. It does not say that one group, A., B. and C., shall be paid, leaving another group, D., E. and F., unpaid. It does not say the contractor may pick and choose whom he would pay and thereby relieve his guarantor. Nor does it say that the vigilant, the strenuous, the persistent shall be paid, and the meek, the patient and the confiding may whistle for their pay. In fine, the ordinance would not be met in its spirit by paying the first, the last or the middle group of laborers or materialmen. It would only be met by paying each and every one of them. The contractor was bound to subserve the full ordinance purpose—an honest and self-evident purpose. Therefore, when appellant signed the contract as guarantor, *prima facie* (absent clear words to the contrary) it stood sponsor for the carrying out of that very purpose; for, by inexorable implication, in the absence of a contrary intent appearing, the ordinance purpose was carried over into the contract and shines there in every line of it. This would be true even if the doctrine, *strictissimi juris,* is applied. In discussing that doctrine in State ex rel. v. Rubber Mfg. Co., 149 Mo. l. c. 212, VALLIANT, J., said: "When parties execute a statutory bond they are chargeable with notice of all provisions of the statute relating to their obligation, and those provisions are to be read into the bond as its terms and conditions."

The view there announced met with the entire approval of this court, In Banc, in Henry County v. Salmon, 201 Mo. l. c. 162-3. In that case the sureties of

Salmon & Salmon invoked the doctrine of strict construction. The case calling for it, the doctrine of State ex rel. v. Rubber Mfg. Co., supra, was relied upon in determining the scope and intendment of the bond in suit, and it was said: "This [view] does not strike down the hornbook propositions that the obligation of the surety should not be stretched or swollen by mere implication, and that sureties are favorites of the law and are entitled (subject to some qualifications) to stand on the terms of the bond, construed *strictissimi juris*. It merely puts the matter on a common-sense footing as between man and man by reading the written law into the bond, discerning the objects to be subserved by the bond, and getting at the true intent and meaning of the bond by applying its terms to the objects sought. The general language of the bond must be interpreted in the light of these considerations."

Furthermore, in the eye of the law, when A., B. and C. contracted to furnish material to construct the sewer and furnished it, they did so on the strength of the protection of appellant's guaranty. They were as much entitled to that protection as D., E. and F. Nay, more, appellant *intended* that A., B. and C. should rely upon the protection of the guaranty. It signed one by its words inevitably *luring* A., B. and C. into relying thereon. It established the contractor's credit. This being so, how comes it that A., B. and C. stand to lose that protection? Certainly, it is by no act of theirs. No more should it be by the act of the law, unless the law is constrained to so act. No more should it be by the act of D., E. and F. Appellant contends that A., B. and C. lost their protection because D., E. and F. absorbed the fund covered by the guaranty, in full. If appellant had paid D., E. and F., it might well answer A., B. and C., that it had filled the measure of its guaranty. But appellant paid never a *kopek, sou* or *ha'-penny*. The contractor paid, and in so doing, did pre-

cisely right as far as he went. But because he paid D., E. and F. and chose to leave A., B. and C. in the lurch, that self-serving and capricious act on his part ought not to strip A., B. and C. of their protection under the guaranty unless it was the obvious intention of the materialmen, the contractor and the guarantor when they started out on their joint venture that it should have that result. Obviously, no such result was contemplated at the beginning, or it would have been plainly so set down; therefore, no such result should be reached at the end. All's well that ends well—not otherwise. How could A., B. and C. protect themselves against the contractor's paying whom he chose? How could they keep alive a valuable right, once theirs, viz.: The security of appellant's guaranty, except as they have done?

Therefore, as this guarantor induced A., B. and C. to contract with the contractor on the theory that it was bound to them it ought not to escape through the loophole of a theory falling short of compliance, so long as they are without fault, and so long as appellant has paid nothing on its liability.

Reduced to simple elements, appellant agreed, in effect, to pay a *balance* not to exceed $83,540. It is the same form of a guaranty, in final analysis, as if A. agreed with B. that C. would pay for all goods C. purchased of B., provided that if A. be called on to pay aught he should not be liable to an extent beyond $500.

## DISSENTING OPINION.

VALLIANT, J.—To the extent that the words in which a contract is expressed leave its meaning in doubt, it must be interpreted in the light of the circumstances surrounding the parties at the time it was made. When this contract of guaranty was made Youman was about to enter into a contract with the city for the construction of a sewer. The city required

that he should give bond and security for the faithful performance of his contract, particularly that he would pay for all labor and materials that went into the construction of the work. An estimate of the probable cost of the work was made by the city engineer, this estimate was $83,540. But it was contemplated that the work might exceed the estimated amount and that fact was in the minds of the parties when they made this contract.

When the sureties were asked to go on this bond and guaranty that the contractor would pay for all labor and materials used, the natural inquiry would be what is the extent of the undertaking, to what extent are we to be obligated? To this the obvious answer was, it is estimated that the cost will be $83,540, but it may go beyond that, how much no one can say. In the face of that uncertainty the sureties had this clause limiting their liability inserted, and in my opinion it was intended to mean that, we guarantee that the contractor will fulfill his obligation up to the amount of the estimated cost, but not up to an indefinite amount beyond. In entering into contracts of this kind men must be credited with some degree of care and forethought. When one goes security for another, especially when the going of security is in itself a business transaction, he usually takes means to ascertain what the man is worth and what are his means of fulfilling his engagement and he circumscribes his guaranty to that estimated capacity.

Suppose that instead of a contract worded as this is a contract had been presented to these sureties saying in plain terms, it is estimated that this work will cost only $83,540, but it is liable to go much beyond that, and though in the course of its performance the contractor should faithfully pay for labor and materials consumed sums aggregating $83,540, yet the sureties on this bond are bound to the further extent of

$83,540 for other labor and materials beyond that so paid for by the contractor, can we conceive a sane business concern signing such a guaranty? Yet, by interpretation that is what this contract is said to mean. Of course if that is what this contract means we have got to enforce it regardless of what we may think of the wisdom of the men who signed it; but if it is a question of construction we ought not to give it that construction, if there is one, more in line with usual business thought.

The evidence shows that the contractor paid an amount far in excess of the $83,540, and therefore in my opinion the sureties are not bound for anything remaining unpaid.