## SMITH *v.* OOSTING.

1. BONDS—STATUTORY—PUBLIC IMPROVEMENT — GASOLINE USED IN TRUCKS "MATERIALS FURNISHED."
   Gasoline furnished a subcontractor for the operation of his trucks used in hauling gravel for the construction of a public highway, *held*, to be "materials furnished" within the meaning of the statutory bond prescribed by 3 Comp. Laws 1915, § 14829.[1]

2. SAME—PARTIES—MATERIALMAN MAY MAINTAIN ACTION IN OWN NAME.
   In view of the judicature act (3 Comp. Laws 1915, § 12353) requiring suits to be prosecuted "in the name of the real party in interest," one who furnished materials for the construction of a public highway, for which he has not been paid, may maintain an action therefor on the statutory bond in his own name, although previous to the enactment of said statute it was required that such actions be brought in the name of the people for the use and benefit of the claimant.[2]

Error to Van Buren; Warner (Glenn E.), J. Submitted October 22, 1924. (Docket No. 129.) Decided April 3, 1925.

Assumpsit by Frank Smith against Frank Oosting and others on a statutory bond. Judgment for plaintiff. All parties bring error. Reversed.

*Earl L. Burhans* and *David Anderson,* for plaintiff.

*Diekema, Kollen & Ten Cate,* for defendants.

[1]Highways, 29 C. J. § 353; [2]Id., 29 C. J. § 353.
[*]Continued from Vol. 229.

BIRD, J.    Defendants Oosting and Hofsteen contracted with the State to construct eight miles of improved highway lying between Decatur and Glenwood. They gave the usual statutory bond prescribed by 3 Comp. Laws 1915, § 14829.    The other defendants are sureties thereon.    The contractors sublet to one Rodney McLeod, who owned a fleet of trucks, the job of hauling the gravel from the railroad cars and distributing it on the highway.    Plaintiff was a vendor of gasoline and furnished McLeod gasoline with which to operate his trucks.    After he had furnished gasoline to the value of $1,000, McLeod paid $300 thereon. This was not satisfactory to plaintiff and he sought an interview with Oosting and Hofsteen, and said to them that he could not furnish McLeod any more gasoline unless some more satisfactory arrangement was made about making payment therefor.    It is plaintiff's claim that this talk resulted in an agreement whereby Oosting and Hofsteen agreed that if plaintiff would continue to furnish McLeod gasoline for his trucks they would deduct it from McLeod's contract when the job was finished.    In reliance upon this promise plaintiff continued to furnish gasoline to McLeod until it amounted to $1,646.28.    One Archie Woolfe furnished gasoline to McLeod at Decatur with which to operate his trucks until he was owing $728.84. This claim was assigned to plaintiff.    Defendants failed to make good their promise, and plaintiff began this suit to recover for these two items of gasoline. The declaration counted on the bond which defendants had given, also upon defendants' promise to retain enough from McLeod's contract to pay his claim. The trial court refused to permit plaintiff to recover on the bond and refused to permit a recovery on the Woolfe claim, but submitted to the jury plaintiff's claim that defendants had promised him to retain sufficient to pay his claim.    The jury returned a

verdict for plaintiff.     Both parties have assigned error.

Was plaintiff entitled to recover on the bond?     The condition of the bond was in compliance with the statute, and in the following form:

"Now, therefore, the condition of this obligation is such that if there shall be paid, as the same may become due and payable, all indebtedness which may arise from said contractor to a subcontractor or party furnishing labor or furnishing materials, or from any subcontractor to any person, firm or corporation on account of any labor or materials furnished in the erection, repairing or ornamentation of such building, improvement or works, then this obligation to be void, otherwise to remain in full force and virtue."

The argument is made by plaintiff that the gasoline furnished and consumed in furnishing power to convey the gravel became a part of the highway and enhanced the value of the same and should be regarded as materials going into it.

The defendants take issue with plaintiff on this contention and insist that the question has been settled by this court adversely to plaintiff's contention.

The contract by which defendants undertook the work of building the highway contemplated that the gravel should be transported from the railway cars to the highway.     It required power to do this, and the gasoline in question furnished the power.     It is true that the gasoline was not visible after the highway was finished, but it was as visible as the labor which was bestowed upon it.     It was used directly upon and for the highway and was instrumental in producing the final result.     In most jurisdictions powder and dynamite used for blasting have been regarded as "materials furnished."     The use of gasoline to convey materials with which to build this highway contributed to and enhanced its value in the same way that powder and dynamite do in blasting for high-

ways.    Neither is physically incorporated into the highway, but both are wholly consumed in aid of the work.    The gasoline contributed to and enhanced the value of the highway as much as though the gravel had been moved by man power or horse power.    The statute contemplates that labor and materials used in constructing, repairing or ornamenting a building, improvement or works shall be protected by the bond.    As the gasoline in question materially aided in the construction and building of the highway, and enhanced its value, it should be regarded as "materials furnished," within the meaning of the statute.

There is an interesting discussion of this question in *Johnson* v. *Starrett*, 127 Minn. 138 (149 N. W. 6), L. R. A. 1915B, 708).    A lien was there claimed for gasoline used in propelling trucks, and dynamite for blasting and excavating for a cellar.    There was also a claim made for parts and repairs for the steam shovel.    The court held no lien could be declared for the parts or repairs on the steam shovel, as those went to enhance the value of plaintiff's personal property, and because they survived the work in which they were engaged.    A lien was allowed for the gasoline and dynamite furnished.    In the course of the opinion it was said:

"From a practical standpoint we think it cannot be justly said, under the plain terms of the statute, that those furnishing the coal, gasoline, and dynamite, did not 'contribute to the improvement' of defendant's property by 'furnishing material for excavating the same.'    Clearly the work of the whirly and motor trucks contributed to the improvement of defendant's property, and as the coal and gasoline furnished the motive power for its accomplishment, the contractors would have been entitled to a lien therefor.    But it is said that these materials were not furnished to excavate defendant's premises or for them, but, on the contrary, for use in and as a part of the plant and equipment of the contractors for the purpose of creat-

ing power, and therefore were not lienable. This contention, we think, is too restricted both as to the facts and law. It ignores both the policy and settled construction of the statute and also modern methods employed in performing building contracts. Both the coal and gasoline were materials, and both were components of the resultant achievement. Had the excavation and removal of the earth been done by manual labor the right to a lien therefor would be undoubted, and we cannot differentiate such a case from one where the same result is reached by other and modern methods. The value of defendant's property was thereby enhanced, and it can make no difference that this was accomplished by use of power obtained from materials furnished by the lien claimants instead of by common labor. See *Fay* v. *Bankers' Surety Co.,* 125 Minn. 211 (146 N. W. 359, Ann. Cas. 1915C, 688). Had the improvement necessitated the pumping of water, the strained construction and refined reasoning necessary to exclude a lien for fuel used in generation of power for the pump would, perhaps, be more apparent. The rule as to explosives should be applied to the items for coal and gasoline, and the trial court's determination as to them is sustained, as is also, by a parity of reasoning, its disposition of the claims for dynamite, rope grease, and materials and supplies for the light plant. The fact that it does not appear that the dynamite was actually used is unimportant, for materials furnished in good faith for a particular improvement are lienable, though not used. See authorities cited in note 10 of the statute quoted. The claim for the toolhouse materials was likewise properly allowed. *Lindquist* v. *Young,* 119 Minn. 222 (138 N. W. 28). The other items, we hold, were not lienable. All were for supplies for or repairs and parts of the excavating machinery and engine, which were mere tools used in the work. These did not contribute to the improvement of defendant's realty, but to the personal property of the contractors. Furthermore, from aught that appears, they survived the performance of the work and remained the property of the contractors. They were not essentially different from repairs for tools requisite for an ordinary workman's labor on the

job.  *Rosman* v. *Banker's Surety Co.*, 126 Minn. 435 (148 N. W. 454), is not in point."

The courts are not in accord on the question.  A large number of cases which discuss the question are cited in the foregoing opinion.  But counsel argue that the question was settled in the case of *City of Alpena, for use of Gilchrist*, v. *Surety Co.*, 168 Mich. 350.  In this case a claim was filed for coal used in a dredge which was used in constructing a submerged crib for water works in the city of Alpena.  A further claim was made for parts and repairs for the dredge and pumps.  The opinion in the case referred to assumed that the question of coal for use in propelling the machinery of the dredge had been settled in *City of Alpena, for use of Besser*, v. *Surety Co.*, 159 Mich. 329.  In referring to that case it will be found no claim was filed for coal or for fuel.  Mr. Justice BLAIR evidently classed fuel with the parts and repairs furnished for the dredge and pumps.  It is quite probable that the distinction between fuel which is wholly consumed in aid of the work, and repairs and parts which enhance the value of the machinery and survive the work then engaged in, was not called to the attention of the court.  In the case cited it was rightly decided that the claim made for repairs and parts was not protected by the bond.  The error, if one were made, was in classifying fuel with "parts and repairs."  We think if this distinction had been called to the attention of the court at that time the court would have recognized and observed it in the opinion.  On principle the distinction should be made, and we are inclined to make it in the present case.

This case was begun by plaintiff in his own name. These cases have usually been commenced in the name of the people of the State of Michigan for the use and benefit of the claimant.  Counsel for defendants raise the question that it was improperly begun for

want of proper parties.    This court held, prior to
the judicature act, that suits upon these bonds should
be begun in the name of the people for the use and
benefit of the claimant.    *People, for use of Higley,*
v. *Laidlaw,* 120 Mich. 358.    Plaintiff's counsel con-
cede this, but argue that the passage of the judicature
act changed this by requiring suits to be prosecuted
"in the name of the real party in interest."    3 Comp.
Laws 1915, § 12353.

The bond is given to the people of the State for the
benefit of a class or classes.    If, subsequently, one be-
comes a member of the class, we can see no impro-
priety in his beginning his suit in his own name to
enforce his claim.    The provision of the judicature act
referred to evidently intended to enlarge the remedy
of a beneficiary in contracts so as to enable him to
enforce his beneficial interest directly by suit in his
own name.    Having reached the conclusion that
plaintiff is entitled to recover on the bond, it will be
unnecessary to discuss other questions raised.

Judgment is reversed, with costs of both courts to
plaintiff.    New trial ordered.

McDONALD, C. J., and CLARK, SHARPE, MOORE,
STEERE, FELLOWS, and WIEST, JJ., concurred.