## JOSEPH H. WISS, Respondent, v. ROYAL INDEMNITY COMPANY, Appellant.*

St. Louis Court of Appeals. Opinion filed March 2, 1926.

1. **HIGHWAYS: Bonds: Contractor's Bond: Claims for Feed Furnished for Teams Used on Work: Whether Bond Was Statutory or Common Law Immaterial.** Whether a contractor's bond, conditioned for payment of all lawful claims for materials furnished or labor performed in construction of highway, the language of which being the same as that required by either section 1040 or 10898, Revised Statutes 1919 (repealed by section 2, p. 133, Laws of 1921, First Extra Session), be construed to be a statutory bond, or a common-law bond can have no effect upon the ultimate determination of the question whether feed sold and delivered to subcontractors which was used by them in feeding the horses and mules used by them on the work falls within the terms of the bond.

2. ———: ———: ———: **Third Parties: May Sue in Own Name.** A third party, for whose benefit a road contractor's bond is made, may enforce the contract in an action prosecuted in his own name, even though viewed as a common-law bond.

3. ———: ———: ———: **Condition of Bond: Materials Furnished: Articles Which Fall Within Its Protection.** Under the condition of a contractor's bond for payment of all lawful claims for materials furnished or labor performed in the construction of highway, which is the same as the requirement of section 1040, Revised Statutes 1919, *held* that only such articles as actually went into the structure or work or improvement, so as to become a part of the same, or such as were used solely for, and wholly or substantially con-

sumed or destroyed in, the construction of the work, structure, or improvement, fall within the protection of the bond.

4. ———: ———: ———: ———: **Feed Furnished for Teams Used on Work: Not Material Entering Into Construction of Highway Within Protection of Bond.** Feed sold and delivered to subcontractors which was used by them in feeding the horses and mules used by them in the work of construction of highway *held* not "material used in such work" within the terms of contractor's bond for payment of claims for materials furnished or labor performed in the construction of highway, even though the feed was eaten and wholly consumed by the terms which were used by the contractor in doing a part of the work.

*Corpus Juris-Cyc. References; Bonds, 9 C. J., p. 27, n. 81. Highways, 29 C. J., p. 612, n. 49 New, 65; p. 613, n. 74.

Appeal from the Circuit Court of Lewis County.—*Hon. J. A. Cooley,* .Judge.

REVERSED.

*H. S. Rouse* and *C. H. Dickey,* for appellant.

The sole point relied upon by the appellant is that the items set out in plaintiff's and respondent's "Exhibit C" do not fall within the contemplation of the bond in this case and are not such items for which there can be a recovery on the bond. The court is not precluded from applying to guaranty contracts the rules and tests applied to other contracts in endeavoring to ascertain the real meaning of the language. Kansas City ex rel. Brick Co. v. Youmans, 213 Mo. 151; Builders Supply Co. v. Construction Co., 204 Mo. App. 87; Railroad v. Surety Co., 203 Mo. App. 148. In the event the contract and bond were not broader than the statute, it would be necessary for the evidence to disclose that the material was used in the work of constructing a sewer. Hill v. Construction Co., 202 Mo. App. 672. Cases relied on by the appellant to support the proposition that the items sued for herein are not within the contemplation of the

bond, are the following: McKinnon v. Red River Lumber Co., 138 N. W. 781; George H. Sampson v. Commonwealth et al., 88 N. E. 911; Fay v. Bankers Surety Co., 147 N. W. 359; City of Alpena v. Title Guaranty & Surety Co. et al., 134 N. W. 23; City of Philadelphia, to use of Taylor, v. Malone, 63 Atl. 539; Standard Oil Co. v. City Trust Safe Deposit & Surety Co., 30 Wash. L. R. 778; Ferguson v. Despo, 34 N. E. 575; Luttrell v. Knoxville, I. & J. R. Co., 105 S. W. 565; Penn. v. Mehaffey, 80 N. E. 177; Dudley v. Toledo, 32 N. W. 884; United States v. Fidelity & D. Co., 169 Ill. App. 1; Parkinson v. Alexander, 14 Pac. 466; St. Louis W. & W. R. Co. v. Ritz, 1 Pac. 27; United States, use of Sica, v. Kimpland, 93 Fed. 403; Armour & Co. v. Western Constr. Co., 78 Pac. 1106; Perrault v. Show, 38 Atl. 724; R. Hass Electric & Mfg. Co. v. Springfield Amusement Park Co., 86 N. E. 248; Van Horn Trading Co. v. Day, 148 S. W. 1129.

*Barker Davis* for respondents.

(1) A contract between two parties on a valid consideration may be enforced by a third party, when entered into for his benefit, is well-settled law in this State. City of St. Louis to use of Glencoe Lime and Cement Company v. Von Puhl et al., 133 Mo. 561; LaCrosse Lumber Co. v. Schwartz, 163 Mo. App. 659; State to use of Hubbard and Moffat Co. v. Cochrane, 175 S. W. 599. (2) The rule of law that a surety is a favorite of the law, and that a claim against him is *strictissimi juris* has no application where a bond like the one in suit is executed by a surety for a compensation, and where the surety is organized as the present defendant and appellant is for the purpose of executing such bonds for hire and for a profit. Such undertakings must be construed strongly in favor of the obligee. Dorr v. Bankers Surety Co., 218 S. W. 398; School District of Caruthersville v. McClure et al., 224 S. W. 831; Lakeland v. Renshaw et al., 256 Mo. 133; M. K. & T. R. R. Co. v. American Surety Co., 236

S. W. 657. (3) The character of the bond, as to whether statutory or common law, has nothing to do with the *strictissimi juris* rule of construction. The rule is to get the intent of the parties under the usual rules of construction. School District of Caruthersville v. McClure et al., 224 S. W. 831. (4) Appellant cites and sets out section 1040, Revised Statutes 1919, being the general statute applicable to contractors' bonds on public works, but fails to cite or mention section 10898, Revised Statutes 1919, which is a statute covering contractors' bonds on State Highway Projects, and which provides that such bond shall be conditioned for the faithful performance of the contract according to the plans and specifications and the payment for all material and labor furnished and performed in the completion of said contract, and giving the right of action to materialmen and laborers for material furnished and labor performed under said bond. Section 10898, Revised Statutes 1919. The above section, 10898, was effective to December 31, 1922, on projects approved under said section. Section 2, page 133, Laws of Missouri, 1921, First Extra Session. (5) Appellant contends that the bond in the case at issue is not broader than the statute and hence under the Missouri ruling it would be necessary for plaintiff to show the material sued for actually entered into the construction of the road, citing in support of such contention the case of Hill v. Construction Co., 202 Mo. App. 672. The case cited does not support appellant's contention, but on the contrary is against his contention in that said case held coal used in engines to haul material a proper charge against the bond under provisions of a bond which respondent submits is not as broad as the one in this case at issue. It is also held in this case that contract and bond can be broader than that required by statute in this State. Hilton v. Universal Construction Co. et al., 216 S. W. 1034. (6) Feed furnished to a contractor under bond providing for prompt payment to all persons supplying labor and materials in the prosecution of a

public work, was held properly chargeable to the bond in United States for use of Samuel Hastings Co. v. Lowrance et al., 252 Fed. 122, 164 C. C. A. 234. Groceries and provisions furnished to a contractor on public work and used by him in feeding men employed on the work in his camp, held properly chargeable to bond in Brogan v. National Surety Co., 246 U. S. 257, 38 Sup. Ct. 250. Other Federal cases, holding the bond chargeable for materials, which did not show in the resulting permanent structure are American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 Fed. 717; City, etc., Trust Co. v. United States, 147 Fed. 155, 77 C. C. A. 397; Title Guaranty & Trust Co. v. Engine Works, 163 Fed. 168, 89 C. C. A. 618; affirmed in U. S. Supreme Court; Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24, 31 Sup. Ct. 140, 55 L. Ed. 72; United States v. Illinois Surety Co., 226 Fed. 653, 141 C. C. A. 409; United States Fidelity Co. v. Bartlett, 231 U. S. 237, 34 Sup. Ct. 88, 58 L. Ed. 200. The foregoing Federal cases, are cited and approved by the Kansas City Court of Appeals in passing upon an action brought upon a contractor's bond. Kansas City to use of Missouri Pacific Railway Co. v. Southern Surety Co., 219 S. W. 727. (7) When parties execute a statutory bond they are chargeable with notice of all provisions of the statute relating to their obligation, and those provisions are to be read into the bond as its terms and conditions. These provisions are a part of the bond of which both principal and surety must take notice. Fogarty et al. v. Davis et al., 264 S. W. 879; Zellars v. National Surety Co., 210 Mo. 92. (8) The word, "construction," as used in the contract and bond in the case at issue, in view of the holdings in the hereinbefore cited cases, should be given its ordinary and usual meaning and application, which is defined as the "act of building." The word "furnish," as used in the contract and bond in the case at issue, should be given its ordinary and usual meaning and application, which is defined as

"to supply with what is requisite." Webster's Dictionary.

BECKER, J.—This is an action brought by plaintiff below against the defendant, Royal Indemnity Company, as surety on a contractor's bond for hay, oats and salt sold and delivered to a subcontractor as feed for his horses and mules used in the work of grading and hauling materials in the construction of a road. A judgment resulted for plaintiff and the defendant appeals.

The sole assignment of error is that since it is conceded that the account sued on was solely for hay, oats and salt that was sold and delivered to subcontractors which was used by them in feeding the horses and mules used by them on the work of constructing a road under a contract with the Missouri State Highway Commission, that such items do not, as a matter of law, fall within the terms of the bond and therefore no recovery for such items can be had against the surety on the bond.

The Missouri State Highway Commission entered into a written contract with O. J. Hanick for the construction of a gravel highway in Lewis county, Missouri, designated as project No. 38.

At the time of the execution of said contract a bond was given to the Missouri State Highway Commission signed by Hanick as principal and the Royal Indemnity Company as surety, conditioned among other things for the faithful performance of the terms and conditions of said contract, and that the principal and surety "shall pay all lawful claims for materials furnished or labor performed in the construction of said highway. . . ." It may be well to note that the contract among other things provides that the contractor is required to provide all necessary machinery, tools, apparatus and other means of construction.

The firm of Thompson & McDaniel was engaged in the construction of the project No. 38 in question as subcontractors under Hanick and the hay, grain and salt

making up the items of the account herein sued upon were fed to the horses and mules belonging to said subcontractors while said horses and mules were being used in grading and hauling work on said highway.

Appellant contends that the bond in question is a common-law bond, because not taken to the State, county, city, township, school or road district as provided by section 1040, Revised Statutes of Missouri, 1919, but is taken in the name of and to the Missouri State Highway Commission, "which is a municipal corporation with power to sue and be sued and to contract and to be contracted with."

It is true that the bond is taken in the name of the Missouri State Highway Commission, whereas section 1040, Revised Statutes of Missouri, 1919 requires the execution of the bond to the State, county, city, town, township, school or road district, as the case may be, but the bond does, however, in all respects measure up to the requirements of section 10898, Revised Statutes of Missouri, 1919 (repealed by section 2, p. 133, Laws of Missouri, 1921, First Extra Session, but which was in effect until December 31, 1922), which section requires that the "successful bidder shall enter into a bond . . . and conditioned for the faithful performance of the contract, . . . and the payment for all materials and labor furnished and performed in the completion of said contract and giving the right of action to materialmen and laborers for materials furnished and labor performed under said bond. . . ."

However whether it be construed to be a statutory bond or a common-law bond can have no effect upon the ultimate determination of the question involved herein in that the language of the condition of the bond itself under which plaintiff seeks to recover is the same as that required by either section 1040 or section 10898 of our statutes. And it has been directly held that a bond, though voluntary and not authorized by any statute, is valid if it does not contravene public policy or violate

any statute, and that in the interpretation of such bond the intentions of the parties gathered from the whole instrument must control its interpretation. [Kansas City to use of Kansas City Hydraulic Press Brick Co. v. Youmans, 213 Mo. 151, l. c. 166, 112 S. W. 225; LaCrosse Lbr. Co. v. Schwartz et al., 163 Mo. App. 659, 147 S. W. 501; Barnes v. Webster, 16 Mo. 258; Waterman v. Frank, 21 Mo. 108; State v. Thomas, 17 Mo. 503.] Even if viewed as a common-law bond there is no question but that a third party for whose benefit a bond is made may enforce the contract in an action prosecuted in his own name. [City of St. Louis to use of Glencoe Lime & Cement Co. v. Von Phul, 133 Mo. 561, 34 S. W. 843; Devers v. Howard, 144 Mo. 671, 46 S. W. 625; City of Bethany v. Howard, 149 Mo. 504, 51 S. W. 94.]

Having in mind that the contractor was required under the terms of his contract to provide all necessary machinery, tools, apparatus and other means of construction, we must decide then whether feed for horses used by a subcontractor in the work falls within the contractor's bond which is conditioned that the contractor and his surety, "shall pay all lawful claims for material furnished or labor performed in the construction of said highway. . . ."

We have examined many cases in other states as well as those of the United States courts, together with those of our own State which have any bearing upon the subject in hand. Our conclusion is that under the condition of the bond herein, which is the same as the requirement of section 1040 of our statutes, only such articles as actually went into the structure or work or improvement, so as to become a part of the same, or such as were used solely for and wholly or substantially consumed or destroyed in the construction of the work, structure or improvement, fall within the protection of the bond.

Whatever our personal views may be as to the desirability for broadening the conditions of bonds required to be given by contractors for public work, we can only

interpret the statute as it stands. To attempt to do more would be a direct invasion of the exclusive field of our Legislature.

The feed furnished for the teams which makes up the account sued on here under the precise language of the bond before us, did not enter into the construction of the work being done by the contractor, nor can it, in our view, be ruled that the feed was "material" that was "used in such work." This is true even though the feed was eaten and wholly consumed by the teams which were used by the contractor in doing a part of the work. The feed in our view was required primarily for the purpose of maintaining the life of the teams, and the teams of course were to be used in the performance of any other contract that the contractor might get. The teams may be likened to machine graders, scrapers, tools, etc., which are not materials in the sense used in the statute but are materials that go to make up the so-called contractor's plant or outfit or equipment which are available not only for this one contract but for other work, and which in the instant case the very terms of the contract required the contractor to furnish. If we are to hold feed for the horses within the bond, then a blacksmith's claim for labor for shoeing and the veterinary for his services must likewise come within the bond. Each of these items however, in our judgment, must be viewed as collateral to the contract and as not contemplated by the parties as coming within the language of the bond as "materials furnished for or labor performed in the construction of said highway."

Our view is not shaken by the Federal cases cited by respondent. [Brogan v. National Surety Co., 246 Fed. Rep. 257; U. S. v. Lawrence, 252 Fed. Rep. 122.] These cases must be viewed in light of the Federal Statute, namely, Act of Congress of August 13, 1894 (28 Stat. at L. 278, ch. 280, N. S. Comp. Stat. 1901, p. 2523, amending act Feb. 24, 1905, ch. 778, 33 Stat. at L. 811, N. S. Comp. Stat. Supp. 1911, p. 1071) which provides that any per-

son contracting for any public work shall execute a penal bond that the contractors shall pay for not only labor and material that go directly into the completed structure, but for all labor and material furnished *"in the prosecution of the work provided for in such contract."* It is at once apparent that the language of the Federal Statute is much broader than that of conditions of the bond before us and of our Missouri statutes, and is in fact broader than many of the Mechanics' Lien Acts of the several states. And it has been directly held that "the Act of Congress and the bond given under it are susceptible of a more liberal construction than the lien statutes referred to, and they should receive it." [City Trust, Safe Deposit & Surety Co. of Phil. v. U. S. to use of Bryant, et al., 147 Fed. 155; Surety Co. v. Lawranceville Cement Co. (C. C.), 110 Fed. 77; U. S. for use of John Davis Co. et al., v. Illinois Surety Co. et al., 226 Fed. 753.]

We have examined each of the cases cited by respondent and find them readily distinguishable from the instant case by reason of the difference in the language of the Federal Statutes as compared with that of Missouri.

This is also true with reference to several cases cited by respondent from various State courts. The case of Clatsop County for use of Frye & Co. v. Fidelity & Deposit Co. of Maryland, 189 Pac. 207, in which case the Supreme Court of Oregon held the person supplying meals to a subcontractor on public work is a furnisher of "labor and material" within the contractor's bond; and also the case of City of Portland for use of Hansen v. New England Casualty Co., 289 Pac. 211, by the same court, in which food for horses working on a project was held "material" furnished a subcontractor, are not applicable to the case in hand, being clearly distinguishable on fact. The Oregon statutes, section 6266 L. O. L., as amended (L. 1913, p. 59) required that the contractor give bond to the county, conditioned, among other things, to "pay all laborers, mechanics, subcontractors and ma-

terialmen and *all persons who shall supply such laborers, mechanics or subcontractors with materials, supplies or provisions for carrying on such work,* and all just debts, dues and demands incurred in the performance of such work.'' The language of the Oregon statute is therefore much broader and comprehensive than ours; and than the conditions in the bond herein. The Oregon statute ''is practically a counterpart of the Federal Act of Aug. 13, 1894, from which it is derived. . . . The statute is fully as broad as the Federal Act. The Oregon Act is garnished with the stronger words where provision is made for security for the payment of 'labor or materials for any prosecution of the work provided for in such contracts.' '' [Clatsop County, etc., v. Fidelity & Deposit Co., supra.]

In the case of Hess & Skinner Engineering Co. v. Turney (Tex.), 207 S. W. 171, wherein it is ruled that the labor of a cook who prepared the meals in the laborers' camp for the contractor came within the terms of the contractor's bond, is without effect in the instant case in that the language of the Texas statute and the bond provided for therein are much broader than that in the State of Missouri, and the bond in the instant case.

In the case of Kansas City to use of Missouri Pacific R. R. Co. v. Southern Surety Co., 203 Mo. App. 148, 219 S. W. 727, relied upon by respondent herein, it was held that where a contractor for a cement bridge gave bond with surety for the payment ''for all material used in the work and improvement done or made, or to be done or made, under said contract, and for all labor performed in said work, whether by sub-contract or otherwise,'' a railway carrier which hauled the materials, which went into the bridge, from a distant point to the place of construction, a right of action accrued to it against the surety on the bond for freight charged for such transportation, but that however since the carrier had waived its lien for such charges by surrendering the property to

the principal in the bond, the action could not be sustained.

The ruling therein that a right of action accrued to the carrier against the surety on the bond for the freight charges was reached upon the authority of Federal cases alone: namely, Brogan v. National Surety Co., 246 U. S. 257; Title Guaranty & Trust Co. v. Crane, 219 U. S. 24; U. S. Fidelity Co. v. Bartlett, 231 U. S. 237; Illinois Surety Co. v. John Davis, 244 U. S. 276; United States .v. Lawrence, 252 Fed. 122. On this point the opinion reads: *"In the respect here considered the bond sued on is not substantially different from those involved in the cases cited;* and so we think that the mere fact of plaintiff being a carrier and that this action is for freight, should not prevent a charge for freight being considered to be within the terms of the bond upon which the action is based."* The court in the case thus held that the bond before it was substantially the same as bonds given under the Federal Act, whereas the bond before us in our view is not as broad nor as comprehensive as the bond given under the Federal Act, and as we have said above is distinguishable on fact from the Federal cases and therefore also distinguishable for the same reason from the case of Kansas City v. Southern Surety Co., supra. Besides it is to be noted that the question in judgment in the Kansas City to use of Missouri Pacific R. R. Co. v. Southern Surety Co., supra, was that of freight for hauling material that went into the job, from a distant point to the place of construction, and the citing therein of the several Federal cases which ruled upon the question of feed furnished for mules and for groceries furnished to the contractor for boarding his workmen as supporting its finding that the freight charges fell within the terms of the bond before the court in that case, must be viewed as *dicta,* so far as the question before us is concerned, and we so treat it.

Also the case of Pacific Wood & Coal Co. v. Oswald, 178 Pac. 854, in which items furnished a subcontractor

consisting of hay and feed for horses and mules used for doing road work were held covered by a bond under the Road District Improvement Act of 1907 of the State of California, is distinguishable upon fact as is shown by the opinion in that case which cites as its authority the rulings and interpretation of the Federal Act as found in the Federal cases because "the provision is substantially the same as that found in Section 9 of our Road District Improvement Act." Therefore what we have said above relative to the broader language and scope of the Federal Act as compared with our Missouri statute and bond herein applies with equal effect to this case.

In the case of Hilton v. Universal Construction Co., 202 Mo. App. 672, 216 S. W. 1034, a case decided by this court, it was held that under the terms of a bond which provided that the contractor who undertook to build a sewer should pay "the proper parties all accounts due for material and labor;" that certain coal and lumber furnished the contractor fell within the terms of the bond. This case is not out of line with our ruling herein and is clearly distinguishable on fact; namely, the difference in the language of the bond, as appears from the following quotation from the opinion therein: "It is our opinion that the question as to whether these interveners are entitled to recover for this material hinges upon the proposition as to whether the material as furnished *comes within the terms of the contract and bond in evidence,* and is not dependent upon the question as to whether or not the material as furnished was lienable under our Mechanics' Lien Statute. As heretofore stated, the statute provides that the bond shall be conditioned for the payment of all material used in said work, whether by subcontractor or otherwise. The bond and contract in the present case *appear to be broader than required by the statute,* and provide that the contractor shall pay the proper parties for all amounts due for *'material and labor used and employed in the performance thereof.'* While it may be true, as contended by appellant, that the

coal and that part of the lumber which was used in the performance of the contract and which was afterwards washed away by the flood, did not actually enter into the construction of the sewer so as to form the basis of a materialmen's lien, still from our viewpoint of this case it is not necessary for us to here decide that proposition.''

We are of the opinion that the rule we adopt herein finds support in an opinion en banc by our Supreme Court in Kansas City to use of Kansas City Hydraulic Press Brick Co. v. Youmans, 213 Mo. 151, 112 S. W. 225, in which a contract of guaranty is construed, the breach in the case being alleged as the failure ''to pay for the work and labor of all laborers and teamsters, teams and wagons employed on the work, and for all materials used therein.'' . . . In the course of its opinion the Supreme Court ruled that ''blasting powder, dynamite, fuses and caps'' were articles for which the defendant became liable by the terms of the contract of guaranty, but ruled that ''such things as rope, picks, pick handles, chains, buckets, spades, shovels, track spikes, rubber boots, etc.,'' did not fall within the terms of the contract of guaranty, holding that ''the articles therein named are such as constituted a part of the contractor's plant or his tools and implements with which to do the work. Such articles, although worn out in the service, did not and do not fall within the terms of material used in the construction of a sewer or like work. Such articles have usually been classified in the contractor's plant or tools and implements of work and not as materials used. . . . There are some loose expressions in several cases that lend color to the contention made by this respondent but we are not impressed therewith and will not follow such cases. Tools, implements and appliances used by the contractor in the prosecution of the work are not materials used therein in any reasonable sense of the term. If a pick, shovel, pair of boots, hoisting rope, or any other implement, tool or appliance used by the contractor on the

work, is worn out or broken, it does not follow that such article thus becomes material used therein within the meaning of the contract. The contract presupposes that the contractor has and will furnish upon his own account the necessary tools, implements and appliances with which to perform the work.''

And to the same effect in American Surety Co. v. Lawrenceville, etc., 110 Fed. Rep. 717, the court said, in distinguishing between those items sued for which the bond covered and those which it did not, ''the underlying principle which has governed the master is correct in that he has discriminated between labor and materials consumed in the work or in connection therewith, and labor and materials made use of in furnishing the so-called contractor's plant and available not only for this but for other work.''

Also in the case of Beals v. Fidelity & Deposit Co., 76 App. Div. 526, 78 N. Y. Supp. 584, affirmed without opinion in 178 N. Y. 581, 70 N. E. 1095, it is held that the bond of a contractor for a public improvement, conditioned for the payment for all materials used in the execution of the contract, and providing that any person furnishing material in or about its execution might maintain an action thereon, is designed for those who furnish materials which either enter into and become a permanent part of the improvement, or are naturally consumed in the course of its construction; and it therefore does not include tools, machinery and appliances which, though employed in the work, survives its performance and can be used upon other contracts. [See, also, United States to use of Seca v. Kempland, 93 Fed. Rep. 403; Perreault v. Shaw (N. H.), 38 Atl. Rep. 724; Wells v. Mehl, 25 Kas. 205; U. S. Rubber Co. v. Bonding Co., 86 Wash. 180; U. S. Fidelity & Guaranty Co. v. California-Arizona Constr. Co., 186 Pac. 502; United States v. Morgan, 111 Fed. Rep. 474.]

The view we are adopting in the instant case finds support in the further case of Fay v. Bankers' Surety Co., 125 Minn. 211. The issue was what ''materials'' fell

within the conditions of a contractor's bond, which among other things provided for the payment of "all just claims for such work, tools, machinery, skill and materials, for the completion of the contract, in accordance with its terms. . . ." While it is ruled therein that coal furnished the contractor which was consumed in generating power used in the building of the ditch under contract was within the terms of the bond, yet it is specifically held that "the allowance for horse feed, provisions, etc., cannot be sustained. These cannot be deemed materials furnished in the execution of the contract, but are, at most, collateral to performance. As suggested in McKinnon v. Lumber Co., 119 Minn. 479, l. c. 484, 138 N. W. 781, 42 L. R. A. (N. S.) 872, they cannot be differentiated from groceries or butcher supplies or clothing for the workmen, or, we may add, their traveling or hotel expenses."

And also the case of Dudley v. R. R. Co., 65 Mich. 655, which construes a Michigan statute (Act 100, Laws 1871 [How. Stat. secs. 3423-4-5]), which protects laborers and persons furnishing material for the construction and repairs of railroads to the amount due from the railroad company to its contractor at the time the bill of items of the labor and material furnished is filed. In this case it is held that the labor covered by the statute applies to manual labor or persons employed and does not extend to teams used upon the work, and that the material referred to does not include feed furnished such teams or clothing or board of the laborers so employed.

To the same effect Pennsylvania Co. v. Mehalley, 116 Am. St. Rep. 746, 75 Ohio St. 432, 80 N. E. 177, in which case a statute giving a lien on railroads for materials furnished is held to have reference to materials furnished for use in the construction of the road so as, in a sense, to become a part of it, and does not include hay, grain and straw furnished a contractor for keeping teams employed by him in working on the road.

The same view is expressed in the case of United States of America, for use, etc., v. Fidelity & Deposit Co. of Maryland, 169 Ill. App. 1, in which it is held that hay, grain, etc., which was actually used for feed for teams which were engaged in and about the work of the construction of certain levees was not included within the Federal Statute requiring bond of the contractor conditioned among other things that the contractor "shall promptly make payment to all persons supplying him, and for labor or materials in the prosecution of the work, provided for in the contract." [2 U. S. Comp. Stat. 1901, p. 2523.]

It follows from what we have said above that the items herein sued on do not as a matter of law fall within the conditions of the bond and that therefore the defendant's demurrer offered at the close of the case should have been sustained. Therefore the court erred in rendering judgment for the plaintiff on the account herein sued for and for that reason the judgment should be reversed. It is so ordered. *Daues P. J.*, and *Nipper, J.*, concur.