STATE EX REL. PENN LUBRIC OIL COMPANY, RESPONDENT, v. J. C. LYLE AND GLOBE INDEMNITY COMPANY, APPELLANT.*

Kansas City Court of Appeals. February 13, 1928.

*Corpus Juris-Cyc References: Highways, 29CJ, section 353, p. 612, n. 65; p. 613, n. 74.

*Nourse & Bell* for respondent.

*Lathrop, Morrow, Fox & Moore, Henry W. Fox* and *Winston H. Woodson* for appellant..

ARNOLD, J.—This is an action instituted in the name of the State of Missouri at the relation of the Penn Lubric Oil Company against the defendant J. C. Lyle, contractor, and the Globe Indemnity Company, the surety on a road contractor's bond, executed in connection with a contract which defendant Lyle had with the Missouri State Highway Commission to do certain work on a State highway project in, Clinton county in said State. The bond running to the State is dated July 18, 1923, and was executed under the provisions of section 1040, Revised Statutes 1919.

Relator, the Penn Lubric Oil Company, and the Globe Indemnity Company are duly organized and existing corporations. Defendant Lyle, a contractor, on or about August 8, 1923, entered into a contract with the State Highway Commission of Missouri, under the terms of which he agreed to do, at his own cost and expense, all the work required in grading and culvert construction on a certain highway known as the State Bond Issue Road from Grayson to Plattsburg in Clinton county, Missouri, and being officially designated as Project No. —, Route 33 of section 8.

Under the terms of the contract, which is the standard road contract required by the State, defendant Lyle agreed to pay for all materials furnished for use in and upon said road project. On or about the 18th day of July, 1923, defendants J. C. Lyle as principal and Globe Indemnity Company as surety, executed and delivered to the State of Missouri their bond in the penal sum of $32,984.31, providing as follows:

"The condition of this obligation is such that if the said bounden principal shall, in all things, properly and promptly complete said work in accordance with the provisions of the within and foregoing contract and the plans and specifications, and shall well and truly perform all the terms and conditions of the said contract to be by him performed, and within the time therein mentioned, or within any additional time granted by the State Highway Commission of Missouri, or its duly authorized agent which may be granted without notice to or consent from the surety, and shall pay all lawful claims for materials used, or labor performed in the construction of said highway under the operation of the laws of the State of Missouri, then this obligation is void; otherwise, it shall be and remain in full force and effect."

Thereafter defendant Lyle entered into a contract with relator, Penn Lubric Oil Company, to furnish for said work certain "goods, wares, merchandise, oil and grease."

It is charged in the petition that pursuant to said contract relator did furnish goods, wares, merchandise, oil, gas and grease, set out in an itemized statement, of the reasonable value of $5213.72; that said materials were furnished and used in the construction of said highway, and that there is an unpaid balance due thereon of $2074.46, and judgment is sought for this amount.

Defendants, in separate answers, generally denied. There was no reply, and upon the issues thus made the cause went to trial to the court, a jury having been waived. There were no findings of fact nor declarations of law requested or given. Judgment was for plaintiff and against both defendants in the penal sum of the bond, $32,084.31, with an order that execution issue against defendants and each of them, for the principal sum of $2071.46 and $176.09 interest, making an aggregate sum of $2247.55.

Motions for a new trial and in arrest were overruled and defendants have appealed.

The facts of record are that the amount involved in this suit covers only gasoline, oils and grease delivered to defendant Lyle, at his construction camp at or near Plattsburg in Clinton county, where the grading under contract was being done and that the same was used principally in machinery, tractors, trucks and cars of defendant Lyle, for use in and about the work in the construction of the road under the contract. There is evidence tending to show that some of the gasoline was consumed in cars which were used by certain of defendant Lyle's employees in traveling back and forth from their work to Kansas City and Plattsburg. There is no evidence tending to show definitely how much of the gasoline was so used; but there is testimony showing that there were in use on the work twelve to fifteen Fordsons and one caterpillar tractor; that the tanks of the tractors were first filled from the gasoline so delivered under the contract, and

the remainder of the delivery placed in a reserve tank maintained for that purpose, to be used as required.

It is shown that when deliveries were made receipts were taken therefor, and in most instances a notation was made on the receipt "Goods used on State work at Plattsburg," or "Merchandise for use on Route 33, sec. 8, Clinton county road construction." It is also of record that defendant Lyle defaulted in the completion of the work under the contract and his surety under the bond, the Globe Indemnity Company, completed the work thereunder during December, 1924, and the spring of 1925, and that all of the amounts sued for herein accrued during the time defendant Lyle was performing work on the project. There appears no conflict between the parties as to the facts and the only dispute lies in the application of the law to the facts.

It is plaintiff's contention that defendant, the Globe Indemnity Company is liable under the bond for the value of the gasoline, oil and grease consumed by defendant Lyle in his operations under that clause in the bond which required payment for "materials used or labor performed in the construction of said highway." On the other hand, defendant Indemnity Company contends (1) that it is not liable for the costs of the gasoline, oils and grease for the reason that they did not "go into the road" and were not "materials used or labor performed in the construction of said highway" and as contemplated by the bond given in conformance with the statute; and, (2) that in no event can said defendant be held liable for the gasoline, oil and grease used by defendant Lyle and his employees in going to and from their homes to the work; and in going from the work to Kansas City and Plattsburg and return.

There is presented but one question for our determination and this is based upon the action of the trial court in refusing defendants' instructions in the nature of demurrers at the close of plaintiff's case, and at the close of all the evidence. The determination of this appeal therefore lies in the correctness of this ruling as applied to the language of the bond. Defendants insist plaintiff failed to make a case and therefore the trial court erred in overruling their instructions in the nature of demurrers, thereby holding the Globe Indemnity Company liable as surety under the statutory bond, conditioned upon the payment for "materials used or labor performed in the construction of said highway" for the cost of gasoline, oils and grease furnished the contractor.

The statute, under the terms of which the bond in question was executed, is section 1040, Revised Statutes 1919, as follows:

"It is hereby made the duty of all officials, boards, commissions or agents of the State, or of any county, city, town, township, school or road district in this State, in making contracts for public work of any kind to be performed for the State, county, town, township, school

or road district, to require every contractor for such work to execute a bond to the State, county, city, town, township, school or road district, as the case may be, with good and sufficient sureties, and in an amount to be fixed by said officials, boards, commissions, commissioners or agents, and such bonds, among other conditions, shall be conditioned for the payment of material used in such work and for all labor performed in such work, whether by subcontractor or otherwise."

It is argued that the only way any of these items in controversy were made use of during the construction of the road was for the operation of tractors and other machinery; that none of the articles went into the making of the surface of the road or in the building of culverts.

It is in evidence that defendant Lyle's contract, in support of which the bond was executed, was for grading and culverts. The point that the gasoline, oil and grease furnished under the contract with Lyle did not go into the making of the surface of the road is without merit. Under the contract Lyle had nothing to do with the surfacing of the road.

Defendants insist there is no testimony to show what part of the gasoline, oil and grease furnished was used by the tractors and other machinery in constructing the road and therefore there was failure of proof. One of the witnesses for defendant Lyle testified that all the gasoline and oil were used in tractors and machinery on the job, and the court had a right to accept that evidence, even though other witnesses said some of the gasoline and oil were used for other purposes.

It is insisted that appellate courts of this State have held repeatedly that these bonds must be strictly construed, and that the liability thereunder is limited to the materials actually going into the construction of the road. In support of this argument defendants cite the case of State ex rel. v. Const. Co., 284 S. W. 150, an opinion by the Springfield Court of Appeals. In that case plaintiff sued the contractor and surety for certain items, including the use of tractor engines in the construction of the road. The bond in that case was identical with the one in question here. The court held that plaintiff had no cause of action except that given by the statute; and that the statute, in terms, did not cover a claim for use of the tractor engine. There is a distinction noted between that case and the one at bar. There the suit was based upon the use of machines not consumed in the construction of the road, while here the materials in suit are alleged to have been entirely consumed in the work. We had this question before us in State ex rel. v. Fidelity & Surety Co. (No. 16138), in which we disagreed with the Springfield Court of Appeals in State ex rel. v. Const. Co., supra, and therefore certified the same to the Supreme Court where it is now pending. There is a distinction

between these cases and that of City v. Youmans, 213 Mo. 151, 112 S. W. 225, cited by both litigants herein. In the Youmans case the court held that tools, implements and appliances were a part of the contractor's plant and did not fall within the terms "materials used in the construction of the sewer." It is noted, however, that the court further held that dynamite, fuse and caps used and consumed in the performance of the work were "materials used in the sewer built" and for which the contractor's bond was liable.

In the case of Wiss v. Indemnity Co. (Mo. App.), 282 S. W. 164, cited by defendants, the suit arose over hay, oats and salt used in feeding the work animals on the job. The court held those items were not covered by the bond and were not materials used in the work, remarking, "the view we are adopting finds support in Fay v. Bankers' Surety Co., 146 N. W. 359, 125 Minn. 211," etc. In the cited case it was held that coal furnished the contractor and consumed in generating power used in the performance of the work came under the heading of "materials" for which the surety was liable.

Our attention is called also to the case of Beals v. Fidelity & Dep. Co., 78 N. Y. S. 584, 178 N. Y. 581, 70 N. E. 1095, wherein the court held the bond was conditioned for the payment of all materials used in the construction of a public improvement and was designed to protect those who furnished materials which went into and became a permanent part of the improvement, or were naturally consumed in the course of its construction; though it did not include tools, machinery and appliances which survived the performance of the work and could be used in other contracts.

To the same effect is the ruling in American Surety Co. v. Lawrenceville, etc. (C. C.), 110 Fed. 717. That case draws the distinction between labor and materials consumed in the work or in connection therewith for which liability under the bond existed, and labor and materials made use of in furnishing the socalled contractor's plant and available not only for the work in question but for other work. [See, also, Lillard v. Indemnity Co., 282 S. W. 166.]

The distinction between the cases just referred to and the one at bar is obvious. Here the gasoline, oil and grease were entirely consumed in the work. In the matter of food for the horses, though it may be entirely consumed, it is at all times necessary to their existence, whether the animals are constantly employed on the work or otherwise; while tractors and other mechanical contrivances do not require sustenance to preserve their existence, they require gasoline, oil and grease for their operation while actually employed in the work. We think the Youmans case, supra, decisive of this point, and in connection with the ruling in Hilton v. Const. Co., 202 Mo. App. 672, 216 S. W. 1034, is decisive of this appeal. See, also, Smith v. Oosting, 230 Mich. 1, 203 N. W. 131, where the court reasoned as follows:

"It is true that the gasoline was not visible after the highway was

finished, but it was as visible as the labor which was bestowed upon it. It was used directly upon and for the highway and was instrumental in producing the final result. In most jurisdictions powder and dynamite used for blasting have been regarded as 'materials furnished.' The use of gasoline to convey materials with which to build this highway contributed to and enhanced its value in the same way that powder and dynamite do in blasting for highways. Neither is physically incorporated into the highway, but both are wholly consumed in aid of the work. The gasoline contributed to and enhanced the value of the highway as much as though the gravel had been moved by man or horse power. The statute contemplates that labor and materials used in constructing, repairing or ornamenting a building, improvement or works shall be protected by the bond. As the gasoline in question materially aided in the construction and building of the highway and enhanced its value, it should be regarded as 'materials furnished' within the meaning of the statute.'' [See, also, Bartles Scott Oil Co. v. Western Surety Co. (Minn.), 200 N. W. 937.]

Cases from other States are cited by both parties hereto in support of their opposing theories. But we think we need go no further than the case of City v. Youmans, 213 Mo. 151, l. c. 178 et seq., 112 S. W. 225, where it is said:

''We think the fifteenth exception was properly overruled. In the account were items for blasting powder, dynamite, fuse and caps. This exception struck at the whole account. When the contract to build this sewer was entered into, it must have been considered that blasting rock would be a necessary part of the work, and to that end the use of such material as above named would be required and used.

. . . . . .

''What was said on this subject by the Supreme Court in the case of Simmons v. Carrier, 60 Mo. 581, must be read in the light of the particular facts of that case. There the claim was for lumber. The court held that a lien could not be maintained for such material unless it actually entered into the construction of the building. This was undoubtedly a proper construction of the statute as applicable to lumber and such like materials to be used in or on the improvements; but in our opinion it is unreasonable to apply such a test to powder which is entirely consumed in its use. What is there said as to powder applies with equal force to dynamite, fuse and caps, likewise used and for like purpose.

''In Powder Co. v. Railroad Co., 76 N. E. l. c. 155, in discussing powder used for blasting in the construction of a railroad, the Court of Appeals of New York says: 'The argument that dynamite is not a material, but a part of the contractor's plant, which, like picks and shovels or mechanical appliances, are used in the performance of work, but are not considered materials furnished within the purview of the statute, seems to us inherently unsound. A steam shovel, an

engine and boiler, picks, shovels, crowbars, and the like, are tools and appliances, which, while used in the doing of the work, survive its performance and remain the property of their owner. Not so, however, with materials that are used up in the performance of the work, and are therefore invisible except as they survive in tangible results. We think that explosives, when used as substitutes for other recognized "materials," are covered by the same principle. They enter into and form a part of the permanent structure quite as much as the earth, rails, ties, culverts, and bridges that we can see and feel.'

"So that as to the articles mentioned aforesaid, we hold that they are materials used in the sewer built and for which the defendant is liable. There was no error in overruling the fifteenth exception."

We therefore hold that the gasoline, oil and grease used as indicated by the evidence are covered by the bond and come within the terms of the statute; that a construction of the statute, liberal or otherwise, is not involved; and that the gasoline, oil and grease were used in the highway within the meaning of the bond sued upon, the bond in this case being in the precise form used by our statute.

The demurrers were properly overruled. The judgment is affirmed. *Bland, J.*, concurs; *Trimble, P. J.*, absent.